Eric **HENDERSON**, Appellant

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2012–SC–000120–DG.

Supreme Court of Kentucky.

Aug. 21, 2014.

---

Susan Jackson Balliet, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Todd Dryden Ferguson, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

After a circuit court jury convicted Eric Henderson of possession of a handgun by a convicted felon, he entered a conditional guilty plea to various other charges: first-degree wanton endangerment, tampering with physical evidence, possession of marijuana, and being a first-degree Persistent Felony Offender. He waived jury sentencing on all charges and accepted a sentence of twelve years' imprisonment.

Appealing to the Court of Appeals, Henderson challenged the trial court's exclusion of prior-bad-acts evidence and hearsay testimony. Regarding the prior-bad-acts evidence, the Court of Appeals—while acknowledging the trial court erred by excluding the evidence—concluded Henderson did not properly preserve the issue for appellate review under Kentucky Rules of Evidence (KRE) 103(a)(2). Spe-

cifically, the Court of Appeals held it could not determine with any degree of certainty what the content of the excluded testimony would have been, making it impossible to assess the impact of the error. Going further, the Court of Appeals held Henderson similarly failed to preserve his challenge to the trial court's ruling excluding Harris's hearsay testimony but noted that, in any event, the excluded hearsay testimony would have been cumulative. The Court of Appeals affirmed the judgment.

We accepted discretionary review of this case primarily to consider whether, in light of the trial court's adverse evidentiary ruling excluding proposed testimony, Henderson's counsel's use of imprecise, general language satisfied KRE 103(a)(2)'s offer-of-proof requirement sufficiently to preserve this issue for appellate review. We affirm the decision of the Court of Appeals because we agree that counsel failed to make an adequate offer of proof.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Henderson and a female friend, Monica Hatcher, went out for an evening at a nightclub. While standing at the jukebox, Henderson was approached from behind by Donnie Harris, a person from Henderson's past.[1] According to Henderson, Harris was at the club with his wife, Tori Williams, and her cousin, Stefan Harbin.

Thinking he was being robbed, Henderson wheeled around and allegedly jabbed the muzzle of a handgun into Harris's stomach. Henderson testified there was no handgun—he simply jabbed two fingers into the suspected robber's stomach, hoping the robber would believe he had a gun. Henderson said he did not realize the supposed robber to be his erstwhile friend Harris until he turned around. Harris then asked Henderson to buy him a drink. A discussion ensued in which Henderson said something insulting about Williams.

Harris returned to his companions and described his encounter with Henderson. Williams became upset and proceeded—without Harris's knowledge—not only to tell the club owner about Henderson's conduct but also to phone the police. So, for the rest of the night, until the warring factions left the club, Harris's contingent and Henderson, with Hatcher,[2] exchanged glares across the club. According to Henderson, he was concerned about Harbin's presence because they had a long-standing sour relationship.

Eventually, Henderson and Hatcher decided to leave. Before leaving, Henderson beckoned Harris to come to his table. The two talked briefly, leaving Henderson with the impression the two had made amends for the earlier interaction. Not long after Henderson and Hatcher left the club, the Harris group got up to leave. The time between the departures of the two groups was short enough that Henderson and Hatcher were still in Henderson's parked vehicle when the Harris group emerged from the club.

The groups began exchanging words with Williams seemingly bent on preventing Henderson from leaving before the police arrived. During the exchange, Henderson apologized for the disparaging remark he made earlier about Williams. Immediately before the police arrived,

---

1. Henderson testified he knew Harris from prison, but Harris testified he knew Henderson from childhood.

2. Of note, Hatcher testified she did not know Harris or Williams; but Henderson strongly denies this assertion.

Williams testified she saw Hatcher open the vehicle's passenger door and throw something. Williams could not see what was thrown, but she believed the item to be the gun Henderson had pulled on Harris inside the club. Harris testified he heard the sound of metal hitting concrete, and an eyewitness across the street testified to the same sound.

The scene inside Henderson's vehicle leading to the discarding of the firearm was perhaps even more dramatic than the scene outside. According to Hatcher's testimony, Henderson tossed a gun into her lap and told her to get rid of it. Hatcher, herself a convicted felon, refused Henderson's demand. The situation escalated as, according to Hatcher, Henderson brandished the gun and repeated his order for her to discard it. Hatcher then threw the gun under the vehicle.

The police arrived and looked for twenty minutes but were unable to locate a firearm. During the search, Harris and Williams steadfastly insisted Henderson had a gun. The police gave Henderson permission to leave the scene. In leaving his parking spot, Henderson reversed slightly, revealing a puddle in which the police spotted a small semi-automatic pistol matching the description provided by Harris. Henderson was arrested. A search incident to that arrest produced marijuana in Henderson's front pocket.

After the jury found Henderson guilty of possession of a handgun by a convicted felon, he pleaded guilty to the remaining charges of: first-degree wanton endangerment, tampering with physical evidence, possession of marijuana, and being a first-degree Persistent Felony Offender. Foregoing jury sentencing as a condition of his guilty plea, Henderson accepted a total of twelve years' imprisonment for all charges.

## II.  ANALYSIS.

Before this Court, Henderson raises two allegations of error: (1) the trial court erroneously excluded testimony of Henderson's prior altercation with Harris and, additionally, the Court of Appeals improperly held the issue was unpreserved for review under KRE 103(a)(2); and (2) the trial court improperly excluded Harris's hearsay testimony regarding turning Henderson in to the police. Because of these errors, Henderson argues he was denied the opportunity to present a complete defense. Of course, the Commonwealth agrees with the holding of the Court of Appeals that the initial issue was unpreserved and, moreover, argues any error associated with Harris's excluded hearsay testimony was harmless. For the reasons stated below, we agree with the Commonwealth and affirm the Court of Appeals.

## A.  Counsel's Offer of Proof About Henderson's Excluded Testimony was Insufficient to Preserve Appellate Review Under KRE 103(a)(2).

At trial, Henderson attempted to testify about an altercation he had with Harris approximately two weeks before the club incident. The Commonwealth timely objected, and the trial court excluded the evidence because Henderson had not provided notice of the prior-bad-acts evidence to the Commonwealth as required by KRE 404(c). At the outset, we should be clear: this ruling was erroneous. By its plain language, KRE 404(c) requires notice to be provided only by the Commonwealth, *not* the defense.[3] Our caselaw's

---

**3.** "In a criminal case, if the *prosecution* intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the *prosecution* to

mandate that only the Commonwealth provide notice is manifest.[4] That being said, we are unable to determine the extent of the trial court's error because of Henderson's vague characterization of the excluded testimony.

Historically, to preserve for review a trial court's ruling excluding evidence, a party was required to present avowal testimony.[5] From the stand, outside the presence of the jury, the witness would provide the testimony he would have given had the trial court allowed it. Of course, this provided a clear record for review; but perhaps more importantly, as much as the practice was justified for sake of clarity, it was equally cumbersome and time-consuming. And the practice of presenting avowal testimony was out of step with both the federal courts and the vast majority of state courts.

■ In 2007, this Court amended several of our evidentiary rules,[6] with the explicit purpose of bringing the rules into uniformity with their federal counterparts. The case before us today revolves around the

alteration made to KRE 103(a)(2). In its current state, the entirety of KRE 103 reads:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

(1) Objection. If the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) Offer of proof. If the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Read as a whole, to preserve a trial court's ruling for appeal, a substantial right[7] of the party must be affected and, relevant to the present case, the substance of the excluded testimony must be provided to the trial court. Notably, KRE 103(a)(2) now

give such notice the court may exclude the evidence offered under subdivision (b) or for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure." KRE 404(c) (emphasis added).

**4.** *See, e.g., Bratcher v. Commonwealth,* 151 S.W.3d 332, 351–52 (Ky.2004) ("KRE 404(c) would be inapplicable here because it applies only to the prosecution, whereas the cross-examination in question here was by the lawyer for a co-defendant.").

**5.** In the sake of clarity, we note that the requirement of avowal testimony by a witness, as opposed to an offer of proof by counsel, was not intended by the drafters of KRE 103(a)(2) and, at least arguably, an attempt at its elimination was made. Professor Lawson notes that former KRE 103(a)(2) "neither authorize[d] nor prohibit[ed] action by counsel to make known the subject of offered-but-

excluded testimony." Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 1.10[3][b] p. 32 (4th ed.2003). Further, the Commentary to former KRE 103(a)(2) stated a change to subsection (b) was intended "to allow the attorney to state for the record what the testimony of the witness would be if permitted to testify." *Id.* at § 1.10[3][b] n. 15. Following this change, however, this Court held: "Counsel's version of the evidence is not enough. A reviewing court must have the words of the witness." *Id.* at § 1.10[3][b] n. 16 (quoting *Partin v. Commonwealth,* 918 S.W.2d 219, 223 (Ky.1996)).

**6.** Supreme Court Order 2007–2, *available* at apps.kycourts.net/Supreme/Rules/2007–02ORDERAMENDING.pdf. Along with KRE 103, KRE 404, KRE 410, KRE 701, KRE 702, and KRE 1103 were amended.

**7.** It is unchallenged that Henderson's right to present his theory of defense is a substantial right.

allows an *offer of proof* rather than requiring "the witness [ ] make a specific offer of his answer to the question." An offer of proof, generally described as a lawyer "adducing what that lawyer expects to be able to prove through a witness's testimony[,]" [8] serves dual purposes. First, the offer of proof provides the trial court with a foundation to evaluate properly the objection based upon the actual substance of the evidence. And, of equal importance, an offer of proof gives an appellate court a record from which it is possible to determine accurately the extent to which, if at all, a party's substantial rights were affected.

At trial, Henderson was asked about any previous incidents with Harris and responded that Harris "ran up behind [him]" two weeks before the night Henderson was arrested. The Commonwealth promptly objected and a bench conference ensued at which Henderson's counsel made the following offer of proof:

> Your Honor, we're about to present a theory of defense. His thing is that this isn't a one night thing. This is something that had been leading up to what happened that night. We think he has a right to put on his theory of defense if the defense is that they, in fact, meant to set him up that night.
>
> . . . .
>
> He just said that they got into it earlier. It's not saying that there's any crimes committed or anything, just that they had an altercation.

Henderson argues that counsel's argument at trial was sufficient to make known the substance of the excluded testimony. Even if counsel's offer of proof was insuffi-

cient, Henderson argues the substance of the excluded testimony was apparent from the context of the questions asked. To support his argument, Henderson relies upon *Weaver v. Commonwealth*[9] for the proposition that precise, specific language is not required to preserve an issue for appeal under KRE 103(a)(2). While we can agree with Henderson that KRE 103(a)(2) may not require avowal-like specificity, we cannot agree that the offer of proof—to the extent counsel's instant statements could be considered as such—put forth here was in any way sufficient.

*Weaver* involved a burglary with an intoxication theory of defense. During the guilt phase of trial, Weaver attempted to introduce expert testimony pertaining to Weaver's intoxication. The trial court erroneously excluded the evidence, allowing instead the evidence to be presented only during the sentencing phase. This Court acknowledged that Weaver's counsel contributed to the trial court's confusion by using "imprecise terminology" and by referring to intoxication as a "mental disease or defect," which are terms more commonly associated with insanity defenses.[10] The caselaw relied upon by the trial court in excluding the testimony exclusively related to the presentation of an insanity defense. Despite the imprecise terminology, however, we held Weaver's counsel adequately preserved the issue for our review because the trial court was "properly informed . . . of [Weaver's] intent to present Dr. Fabian's expert testimony in the guilt phase of the trial[.]" [11] We went on to note that the issue was properly preserved "[g]iven [1] defense counsel's oral remarks that the expert testimony was offered to show that Weaver did not know what he was doing at

**8.** Bryan A. Garner, *Garner's Dictionary of Legal Usage*, p. 630 (3d ed.2011).

**9.** 298 S.W.3d 851 (Ky.2009).

**10.** *Id.* at 856.

**11.** *Id.* at 856–57.

the time of commission of the offense and [2] the filing of Dr. Fabian's report stating that he offered an opinion concerning KRS 501.080 and a voluntary intoxication defense[.]" [12]

Henderson's reliance on *Weaver* is understandable but misplaced. The excluded testimony in *Weaver* was only excluded for a portion of the trial. Importantly, Dr. Fabian's testimony, while not permitted during the guilt phase, *was* allowed during the sentencing phase. And the trial court was aware of the content of Dr. Fabian's testimony because Dr. Fabian's expert report was produced two days before trial. As a result, this Court was aware of the excluded content and could accurately surmise the impact of its exclusion on Weaver's trial. Here, we find no such guidance.

We could have spoken with more clarity in *Weaver* regarding KRE 103(a)(2)'s requirements for preservation. In *Weaver*, we appear to indicate that simply presenting to the trial court the excluded evidence's grounds for admission is sufficient for preservation. [13] Of course, this is not entirely accurate. The grounds for admission should be presented to the trial court but also should the substance or content of the excluded testimony. This was implicit in *Weaver* because the content of Dr. Fabian's testimony, while excluded during the guilt phase, was made known to the trial court through his published report before trial.

The problem with Henderson's offer of proof and his reliance on *Weaver* is the absence of any meaningful description of the content of the excluded testimony. [14] By name, an offer of proof must contain some modicum of *proof*. Here, Henderson's counsel simply made vague references to the general theory of defense but did not highlight what Henderson would actually say if given the chance to testify. Sure, Henderson's counsel mentioned an altercation and Henderson said Harris "ran up on [him]"; but this was not sufficient to make the substance of the proposed evidence known to the trial court because it proves nothing. General statements like those offered by Henderson's counsel might be sufficient if, as in *Weaver*, the trial court already has the content

---

12. *Id.* at 856 n. 12.

13. *See id.* at 856–57 ("So, despite the use of imprecise terminology, defense counsel adequately presented the basis for admitting the expert testimony on the voluntary intoxication defense to the trial court and preserved this issue for appellate review. Because defense counsel properly informed the trial court of the defendant's intent to present Dr. Fabian's expert testimony in the guilt phase of the trial, the issue was properly preserved for appeal.").

14. Of note, the requirement that, at the very least, the offer of proof indicate the excluded testimony's content is not at all novel:

In the absence of any statement of appellant or his counsel, made at the time of asking the question, showing what he expected or believed the witness would say in response, it is impossible for us to decide that the refusal to allow an answer was prejudicial to the accused.

It is only for error in excluding or admitting important evidence that this court can reverse a judgment of this character and the bill of exceptions should show with reasonable certainty that the evidence admitted or excluded was important. The simple refusal to permit an answer to a question is not, of itself, sufficient to show the character of the evidence intended to be elicited by the question. The party excepting to the refusal should, in order to avail himself of the error of the circuit court, state what he expected or believed the witness would prove in response; and let the bill of exceptions show it. Otherwise, this court [cannot] say that the evidence sought by the inquiry was important, or that the refusal to permit an answer was prejudicial to the defendant. *Tipper v. Commonwealth,* 58 Ky. (1 Met.) 6 (1858).

of the testimony to review.[15] But such is not the case here.

Nor does the context of the questioning indicate in any way the substance of the excluded testimony.[16] Again, all the questioning indicates is that Henderson and Harris encountered one another roughly two weeks before Henderson's arrest. We are left unaware of whether "running up" on someone is a malicious encounter, friendly encounter, or a happenstance. And the context of the questioning alone does not indicate how Henderson would describe the encounter or what it illustrates about Henderson's arrest. Before the question at issue, Henderson was asked about how he knew Harris. After the question, the focus returned to the night of Henderson's arrest. The context of questioning fails to shed any light on what Henderson would say about the previous encounter or how it would be relevant.

■ Generally speaking, an offer of proof must not be "too vague, general, or conclusory."[17] We find support for this view in the caselaw of federal courts and our sister state courts.[18] In *United States v. Winkle*, defendant's counsel "merely stated that Winkle would testify as to [h]is version of the conversations he had with [others]."[19] The court found this offer insufficient. And in *United States v. Adams*, the Tenth Circuit noted an adequate offer of proof "must, first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence."[20] "In this case, all that trial counsel established was the general subject matter of the evidence. What was required was an indication of the substance of the evidence."[21] In the final analysis, while KRE 103(a)(2) does not require a formal offer of proof, it does require an indication of "the facts sought to be elicited or the specific facts the witness would establish."[22]

In its current form, KRE 103(a)(2) is intended to be flexible but that flexibility does not diminish the fact that its compliance is mandatory. A proper offer of proof is vital, not only to the trial court,

---

**15.** *See United States v. Ganier*, 468 F.3d 920, 924–25 (6th Cir.2006) (holding government preserved exclusion of expert testimony for appeal despite only informing the court the expert witness would testify as to "what he found on the computers" because "[t]he district court had before it copies of the reports generated by the forensic software" and "[d]efense counsel gave further details, stating that [the expert] had run software revealing what searches had been run at particular dates and times.").

**16.** Typically, the context of questioning adequately indicates the substance of the excluded testimony in situations where the answer to the question is known, *e.g.* defense asks the defendant whether he was at the scene of the crime on a particular night, or where testimony has been received, but subsequently stricken. *See* 1 FED. RULES OF EVID. MANUAL 103.02[7], p. 103–16 (9th ed.2006).

**17.** 21 FED. PRAC & PROC. § 5040.1 (2d ed.) (quoting Mueller & Kirkpatrick, FEDERAL EVI-

DENCE, p. 71 (2d ed.1994); Cleckley, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS, p. 112 (3d ed.1994)).

**18.** *See* 21 FED. PRAC. & PROC. EVID. § 5040.1 n. 10 (2d ed.) (compiling cases).

**19.** 587 F.2d 705, 710 (5th Cir.1979).

**20.** 271 F.3d 1236, 1241 (10th Cir.2001). *See also Polys v. Trans–Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir.1991) ("To satisfy the rule, we have previously stated that merely telling the court the content of ... proposed testimony is not an offer of proof.") (internal quotation marks omitted).

**21.** *U.S. ex rel. Veal v. DeRobertis*, 693 F.2d 642, 648 (7th Cir.1982).

**22.** 21 FED. PRAC. & PROC. § 5040 (2d ed.) (citations and internal quotation marks omitted).

but also in providing the opportunity for sound appellate review. To this end, Henderson's offer of proof highlights why KRE 103(a)(2) requires what it does. As we stated before, the trial court undoubtedly erred in excluding the testimony on the specified grounds. Sympathetic as we may be to Henderson's plight, we are left with little indication of how this error affected Henderson's trial because the record fails to show what the other-altercation evidence would have been. As a result, we are simply unable to determine if the error is reversible, harmless, or otherwise.

## B. The Exclusion of Henderson's Hearsay Testimony was Harmless.

■ Henderson also challenges the trial court's denial, on hearsay grounds, of a portion of Harris's testimony. In conjunction with this challenge, Henderson additionally charges the Court of Appeals erred in holding the issue unpreserved. We disagree.

Before dealing with the underlying hearsay issue, we must warn against violating our long-standing prohibition against presenting a new theory of error at the appellate level—the overwrought but irresistibly descriptive prohibition against feeding a different can of worms.[23] Before this Court, Henderson argues the Court of Appeals erroneously enlarged the scope of this prohibition, essentially disallowing the citation of any case not previously presented to the trial court. To be clear, if the holding of the Court of Appeals below could be correctly characterized to support the proposition as Henderson presents it, we would strongly denounce that view. The citation of new caselaw, alone, does not violate the can-of-worms doctrine. We review issues, arguments, and records. Case law refines, distills, and supports the overall argument of error. But we are unable, through any reading of the holding of the Court of Appeals, to discern any indication that the Court of Appeals intended to espouse the rule that Henderson now so strongly challenges.

■ Instead, what we understand the Court of Appeals to say is nothing more or less than what this Court has required for decades: On appeal, a party may only present those issues that were fully presented to the trial court and, further, may not bring forward new legal grounds on appeal to challenge those errors.[24] This rule is a keystone of Kentucky appellate practice, and the policies undergirding it remain strong.[25] The trial court should be

---

23. *See Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010).

24. *See Fischer v. Fischer*, 348 S.W.3d 582, 588–89 (Ky.2011) ("If the specific ground complained of on appeal is not given at the trial court, then the movant has failed to preserve his thinking should the trial court rule against him, and there will be no record to establish that the court did not rely on other grounds that might suffice."); *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999).

25. This policy has existed in Kentucky courts for decades. *See, e.g., Henson v. Commonwealth*, 20 S.W.3d 466, 470 (Ky.1999) ("Appellant failed to argue before the trial court that his confession was inadmissible for the reason he now alleges on appeal, and we are not at liberty to review alleged errors when the issue was not presented to the trial court for decision."); *Reg. Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky.1989) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court."); *Combs v. Knott Cty. Fiscal Ct.*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ("It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court."); *Ben. Ass'n of Ry. Employees v. Secrest*, 239 Ky. 400, 39 S.W.2d 682, 687 (1931) ("A defense not relied on in the trial

given a "reasonable opportunity to consider the question during the trial so that any problem may be properly resolved at that time, possibly avoiding the need for an appeal"; and the rule ensures "there is a discrete decision for an appellate court to review" by "requiring that trial counsel focus the trial court's attention on a purported error by specifically identifying it[.]"[26]

In this respect, Henderson's appeal is indeed problematic. At trial, Henderson elicited testimony from Harris that Henderson was a snitch and he had previously snitched on Harbin. Henderson was successful in getting this testimony before the jury, prompting Harris to testify that he planned on beating up Henderson at some point in the future for Henderson's derogatory remarks about Williams and that, indeed, Henderson was a snitch. Pushing on, Henderson asked Harris if, outside the club, he said he "was going to tell on [Henderson] like [Henderson] told on Stefan Harbin." The Commonwealth timely objected on hearsay grounds. At the ensuing bench conference, Henderson's counsel argued the statement was not hearsay because it was not offered to prove the truth of the matter asserted but, instead, was only offered to show Harris's bias against Henderson and motive to frame him on the night in question. The trial court viewed the questioning not as an attempt to show bias—the previous questions involving Harris calling Henderson a snitch went to bias in its opinion—but, rather, to introduce a specific statement for the truth that the statement was made.

Notably, before this Court, Henderson argues the trial court's ruling violated KRE 801A(1), KRE 613, and the *Jett*[27] rule, none of which involves bias.[28] The cited provisions instead center upon prior inconsistent statements, a legal argument completely absent from the bench conference following the Commonwealth's objection. The citation of KRE 801A(1), KRE 613, and *Jett* is not a refinement of Henderson's argument at trial—it presents a wholly different legal theory. Bias and prior inconsistent statement are not equivalent.

Regardless, preservation issues aside, any alleged error by the trial court in excluding Harris's hearsay testimony was harmless.[29] Henderson was able to put on his full theory of defense: Harris and Williams, perhaps with the help of Hatcher, framed Henderson because of some lingering animosity toward him. And Harris clearly stated he thought Henderson was a snitch and, if Williams had not called the police, he planned on assaulting Henderson in the future. We stop short of saying Harris's excluded testimony would have been cumulative, but we have no

---

court will not be considered on appeal to this court.").

**26.** *Fischer,* 348 S.W.3d at 588.

**27.** *Jett v. Commonwealth,* 436 S.W.2d 788 (Ky.1969).

**28.** Of note, KRE 803(3) could arguably have been used by Henderson to insert Harris's statement into the trial. That rule, however, has not been argued.

**29.** An error is not harmless "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.... So we must determine whether the [error] had a substantial influence on the outcome, or whether we at least have a grave doubt as to whether the error substantially influenced the jury's guilty verdict[.]" *Crossland v. Commonwealth,* 291 S.W.3d 223, 233 (Ky.2009) (internal quotation marks and citations omitted).

"grave doubt" [30] as to whether the trial court's error, to the extent it was error, substantially influenced the jury's verdict.

## III. CONCLUSION.

When faced with an arguably erroneous trial court ruling resulting in the exclusion of evidence, it is imperative for trial counsel to preserve properly the error for appeal. The recent amendments to our rules of evidence permit a certain degree of vagueness or imprecision; but, at a minimum, the record must provide some indication of the substance of the excluded testimony. That is to say, the content, its significance, and its relevance should be presented to the trial court. Otherwise, we are left in the dark on appeal, forced to speculate not only about the actual content of the testimony but also the impact of the trial court's error on the trial's overall credibility.

Regardless of any preservation misstep, the trial court's exclusion of Henderson's hearsay testimony was harmless.

For the foregoing reasons, we affirm Henderson's conviction and sentence.

All sitting. ABRAMSON, CUNNINGHAM, KELLER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., dissents and would find the offer of proof sufficient.