Micah HOLLAND, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2014–SC–000033–MR

Supreme Court of Kentucky.

RENDERED: AUGUST 20, 2015

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, for Appellant.

Jack Conway, Attorney General of Kentucky, William Robert Long, Jr., Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, for Appellee.

### OPINION OF THE COURT BY
### JUSTICE VENTERS

Appellant, Micah S. Holland, was convicted in the Christian Circuit Court for the wanton murder of his first cousin, Joey Weatherwax. He was sentenced to twenty years' imprisonment. As grounds for relief, Appellant contends that trial court erred by: (1) instructing the jury on the charge of wanton murder, or alternatively, failing to direct a verdict on the wanton murder charge; (2) refusing to clarify for the jury the meaning of the word, "wantonly," as used in the jury instructions; (3) excluding proffered ·evidence concerning the victim's predisposition towards violence; (4) improperly instructing the jury

on the issue of self-protection; and (5) denying his request for an instruction on extreme emotional disturbance. Appellant further claims that if any single error is insufficient to warrant the reversal of his conviction, the cumulative prejudice resulting from multiple errors requires us to reverse his conviction. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Weatherwax grew up together amidst a large, extended family in the Christian County area. The record discloses that both Appellant and Weatherwax suffered from mental and emotional issues for which they were prescribed medications, and that both experienced difficulties with alcohol and illegal drug use. More significantly, Appellant's wife, Christina, had previously been married to Weatherwax, and this led to ongoing animosity between the two.

Various events foreshadowed the present trouble, including an altercation in Clarksville, Tennessee, between Appellant and other family members, which led Appellant to believe that his family members were "all against him." On a different occasion, Appellant complained that Weatherwax and other family members had loosened the lug nuts on the wheels of his car and cut his brake or power steering lines. On yet another occasion, Weatherwax allegedly asked his grandmother for money to buy ammunition so that he could shoot Appellant.

During the late night hours of September 8, 2012, and the early morning hours of September 9, 2012, another cousin, Kyle Cherry, hosted a gathering at his residence that was attended by several family members, including Weatherwax. In the hours preceding this event, Appellant and Weatherwax engaged in several acrimonious telephone conversations during which each made threats against the other. In the last of these conversations, Appellant indicated that he was on his way to confront Weatherwax. Weatherwax encouraged Appellant to do so, and then armed himself with a two-by-four board to await Appellant's arrival.

As Appellant arrived, Weatherwax ran toward his vehicle armed with the two-by-four. Appellant fired a shot from his open car window; the bullet struck Weatherwax, who collapsed on the road with the board at his feet. As he fled from the scene, Appellant ran over Weatherwax. The official cause of death was listed as a gunshot wound to the chest.

Appellant was charged with murder. At trial, he declined to testify and called no witnesses. His defense, based upon principles of self-protection, was presented through cross-examination of the Commonwealth's witnesses and trial counsel's arguments to the jury. The trial court instructed the jury that it could find Appellant guilty of murder if it believed he acted either wantonly or intentionally in causing Weatherwax's death. The jury found Appellant guilty of wanton murder.

## II. THE INSTRUCTION ON WANTON MURDER WAS WARRANTED BY THE EVIDENCE

■ Appellant challenges the sufficiency of the evidence supporting the charge of wanton murder. He contends that all of the evidence adduced at trial indicated that he intentionally shot Weatherwax and that he acted deliberately to protect himself from Weatherwax's imminent attack. In Appellant's view, the evidence supported only two possible verdicts: not guilty by reason of self-protection, or guilty of intentional murder. Accordingly, he contends that the trial court erred by instructing the jury on wanton murder. To the same

end, he argues that the trial court should have directed a verdict on the wanton murder charge. We do not agree.

With respect to Appellant's claim that a directed verdict on wanton murder should have been granted, leaving the jury to consider only the charge of intentional murder, we note as we have in the past that a motion for a directed verdict is not the proper means "for obtaining any relief short of complete acquittal." *Trowel v. Commonwealth*, 550 S.W.2d 530, 531 n.1 (Ky.1977). Appellant does not claim that he was entitled to a directed verdict of total acquittal; he concedes that the Commonwealth presented sufficient evidence to justify an intentional murder instruction. Therefore, the appropriate avenue of relief was to object, as Appellant did, to the giving of an instruction on wanton murder. "When the evidence is insufficient to sustain the burden of proof on one or more, but less than all, of the issues presented by the case, the correct procedure is to object to the giving of instructions on those particular issues." *Kimbrough v. Commonwealth*, 550 S.W.2d 525, 529 (Ky.1977). We have no further need to discuss the directed verdict aspect of Appellant's argument, and so we turn our attention to the allegation of instructional error.

It is well established that "[i]n a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999); *see also* RCr 9.54(1). To ascertain whether the jury instruction on wanton murder was proper, "we must ask ourselves, construing the evidence favorably to the proponent of the instruction, whether the evidence would permit a reasonable juror to make the finding the instruction authorizes." *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky.2013).

The crime of murder may be committed by one acting intentionally (KRS 507.020(1)(a)), or wantonly (KRS 507.020(1)(b)). Neither form of murder is a lesser included offense of the other; each is an alternative form of the same offense. *Ordway v. Commonwealth*, 391 S.W.3d 762, 795 (Ky.2013). *See also Smith v. Commonwealth*, 737 S.W.2d 683, 689 (Ky. 1987) ("[T]he offense of murder may be committed with either of two culpable mental states, intentional or wanton."). It is, however, worth noting that we have held that "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky.2001). By the same reasoning, it follows that if the evidence is such that a reasonable juror could have a reasonable doubt about whether a defendant acted with the intention of causing the victim's death and at the same time believe beyond a reasonable doubt that the defendant acted wantonly, an instruction on wanton murder would be proper.

Appellant concedes that the evidence could support a verdict of intentional murder in the event the jury rejected his self-protection defense. He argues, however, that a reasonable juror could not, from the evidence presented at his trial, reasonably believe beyond a reasonable doubt that he acted wantonly. To act "wantonly" with respect to another's death, one must be "aware of and consciously disregard[ ] a substantial and unjustifiable risk that [death] will occur.... The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from

the standard of conduct that a reasonable person would observe in the situation." KRS 501.020(3). In addition, however, to return a verdict of wanton murder, the jury must further find that the defendant's conduct "create[d] a grave risk of death to another person." KRS 507.020(b).

Applying the above standards to the evidence in this case demonstrates the propriety of the trial court's instruction on these alternate forms of murder. As Weatherwax charged toward Appellant's vehicle wielding a two-by-four, Appellant fired a single shot from the window of his car. He then ran his vehicle over Weatherwax in the process of fleeing from the scene. As related by those present at the shooting, Appellant's state-of-mind during the critical moments could not be precisely gauged. Appellant did not testify or otherwise present direct evidence of his objectives during the incident, and so the jury was left to infer his state-of-mind based upon the totality of the evidence presented.

■ Certainly, "[a] defendant may be presumed to intend the natural and probable consequences of his act, and thus a jury is entitled to find an intent to cause death from an act of which death is a natural and probable consequence." *Smith v. Commonwealth,* 737 S.W.2d 683, 688 (Ky.1987). And so, while the jury could have readily inferred that Appellant intended to kill his cousin, the proof of such an intention was not so compelling as to negate all other possibilities. "[W]hether a defendant actually has an intent to kill remains a subjective matter ... neither the inference nor the presumption of intent are mandatory." *Hudson v. Commonwealth,* 979 S.W.2d 106, 110 (Ky.1998). A reasonable juror could easily have believed from this evidence that Appellant had no specific intent to cause Weatherwax's death, and was instead simply indifferent to Weatherwax's life as he con-

sciously disregarded the substantial and unjustifiable risk of death to another person that his conduct was creating, thus satisfying the elements of KRS 507.020(b).

■ A trial court's decision on whether to instruct the jury on a particular offense is necessarily based upon the evidence. In recognition of a trial court's closer view of the evidence, we review questions concerning the propriety of giving a particular instruction for abuse of discretion. *Ratliff v. Commonwealth,* 194 S.W.3d 258, 274 (Ky.2006). Here, we see no abuse of discretion by the inclusion of a wanton murder alternative in the instructions under the circumstances of this case.

■ A further parsing of Appellant's argument on this issue discloses the value in mentioning one other point. Appellant focuses his argument on the undisputed fact that he voluntarily and deliberately, i.e., intentionally, fired the gun at Weatherwax, as if that fact was dispositive of the issue. His argument illustrates a common misperception. The proper inquiry under the intentional murder provision of KRS 507.020(1)(a) is *not* whether the defendant intended to fire the bullet at his victim; rather, it is whether he intended to cause the death of his victim when he fired the bullet. The difference may be subtle, but in reviewing the sufficiency of the evidence, the difference is critical. Obviously, intent to cause the death may be inferred from the intentional firing of the gun; but the ultimate question under KRS 507.020(1)(a) is whether Appellant acted "with intent to cause the death of another person" when he fired the gun, not whether he intended to fire his gun.

## III. THE TRIAL COURT PROPERLY DECLINED TO ELABORATE ON THE MEANING OF THE WORD "WANTONLY"

■ After receiving the trial court's instructions and retiring to deliberate, the

jury sent a note to the trial court asking the judge to clarify the meaning of the word "wantonly" by providing an example of conduct that would be considered "wanton." In response, the trial judge explained to the jury in open court:

[T]he only thing I can tell you about the definition of wantonly is that which is already contained in the jury instructions which you have been provided. I understand that there has been a request for an example of what wanton would be and unfortunately I can't give that to you.

Appellant complains on appeal that the judge should have provided the requested clarification to dispel any confusion the jury may have had about the concept. Appellant cites to *Bollenbach v. U.S.*, 326 U.S. 607, 612–613, 66 S.Ct. 402, 90 L.Ed. 350 (1946), for the proposition that "[w]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." Significantly, however, Appellant made no contemporary complaint about the trial court's response to the jury's request, and even now he offers no suggestion as to what the trial court should have said to the jury. Consequently, because the issue is not preserved, our review is limited to the manifest injustice standard contained in RCr 10.26.

■■■ We certainly agree with the conclusion of the United States Supreme Court in *Bollenbach* that the ability of the jury to discharge its responsibility "depend[s] on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." *Id.* at 612, 66 S.Ct. 402. Upon review, we are satisfied that the trial court properly responded to the jury's inquiry and that the standard of *Bollenbach*

was properly observed. The written instruction given to the jury included this explanation of the word "wantonly":

A person acts wantonly with respect to a result or to a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

The foregoing instruction closely reflects the statutory definition of "wantonly" provided by KRS 501.020(3), and is consistent with the definition suggested in Cooper & Cetrulo, *Kentucky Instructions to Juries, Criminal* § 3.03 (5th ed. 2015).[1]

■■■ We acknowledge that the concept of wanton behavior, especially within the murder-self-protection paradigm, is more complex than some of the other matters that jurors must routinely address. But the idea of "wantonness" is well within the realm of an ordinary person's real-life experiences, and we believe the articulation of the concept in the jury instructions would adequately convey its meaning to any reasonable individuals charged with the responsibility of rendering a verdict in a criminal case. We trust jurors to give careful, attentive, and deliberate reflection to the decisions they are required to make, even complex decisions. That is, after all, the reason their decision making process is called "deliberation." We cannot flinch when they are called upon to do so in

---

1. We agree with the cited text that the last sentence of the definition of "wantonly" should be included in the jury instruction only when there is evidence to support the inference that the defendant was intoxicated at the time of the offense.

difficult cases. We do not expect trial judges to provide juries with quick answers to hard questions. Any attempt by a trial judge to simplify the juror's task by giving them an example of what the judge regards as wanton conduct introduces the unreasonable and unnecessary risk that such examples would be grossly misleading or unduly suggestive. We commend this trial judge for refusing to do so. Far from manifest injustice and palpable error, we find no error at all in his handling of this matter.

## IV. THE EXCLUSION OF EVIDENCE OF THE VICTIM'S PREVIOUS PARTICIPATION IN A ROBBERY DOES NOT WARRANT REVERSAL

Appellant contends that the trial court erred by sustaining the Commonwealth's objection to his cross-examination of Amanda Combs, Weatherwax's girlfriend. Appellant wanted to ask Combs about an occasion she witnessed when Weatherwax, with an accomplice, violently accosted and robbed a person. The trial court excluded the evidence because that episode was "a little too remote" and did not have "anything to do with the" crime charged. While we do not endorse the trial court's reason for excluding the evidence, we are unable to find reversible error here because Appellant has not adequately preserved the issue by an avowal or other proffer disclosing what Amanda's testimony would have been upon this point so that we may undertake a meaningful review.

KRE 103 states:

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . . If the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Generally, a homicide defendant may introduce evidence of his victim's character for violence in support of the claim that he acted in self-defense or that the victim was the initial aggressor. However, such character evidence must ordinarily be in the form of reputation or opinion. *Moorman v. Commonwealth,* 325 S.W.3d 325, 332 (Ky.2010). Specific acts of violence by the victim are admissible to prove his violent character only when accompanied by proof "that the defendant knew of such acts, threats, or statements at the time of the encounter." ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 2.15[4][d] (4th ed. 2003).

As we said recently in *Henderson v. Commonwealth,* citing KRS 103(a)(2), "[t]o preserve a trial court's ruling for appeal . . . the substance of the excluded testimony must be provided to the trial court" by way of an offer of proof "adducing what that lawyer expects to be able to prove through a witness's testimony." 438 S.W.3d 335, 339–40 (Ky.2014). We explained that the offer of proof serves two purposes: it "provides the trial court with a foundation to evaluate properly the objection based upon the actual substance of the evidence[;]" *Id.* at 340, and, it "gives an appellate court a record from which it is possible to determine accurately the extent to which, if at all, a party's substantial rights were affected." *Id.*

Here, the trial court was not apprised of what Amanda had to say on the vital subject of Appellant's knowledge of Weatherwax's involvement in a violent robbery. We therefore have no means to adjudge the sufficiency of Combs' proposed testimony. As such, we conclude the issue is not adequately preserved for review. We discern no basis for reversal in connection with this argument.

## V. THE JURY INSTRUCTIONS PERTAINING TO SELF–PROTECTION WERE CORRECT

 Appellant next argues that he was denied due process because the jury instructions, as they relate to the issue of self-defense,[2] were misleading and confusing. Specifically, Appellant does not suggest that the instructions provided by the trial court in this case misstated the law; rather, he complains that the instructions were structured in a manner that diminished the jury's ability to consider the concept of the imperfect self-defense. He argues on appeal that better instructions should have been given, namely, the ones suggested by this court in *Commonwealth v. Hager*, 41 S.W.3d 828 (Ky.2001). Ironically, the trial court expressly brought to the attention of trial counsel the instructions proposed in *Hager*. Significantly, neither the defense nor the prosecution requested the jury to be so instructed.

RCr 9.54(2) provides that "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." Clearly, Appellant never informed the trial court of deficiencies that he now claims unduly tainted the instructions and deprived him of a fair trial. He seeks palpable error review under RCr 10.26.

 In *Martin v. Commonwealth*, 409 S.W.3d 340, 346 (Ky.2013), we held that "when the allegation of instructional error is that a particular instruction should have been given but was not, or that it should not have been given but was given," RCr 9.54 bars palpable error review. We distinguished that kind of instructional error from the claim that a particular instruction was incorrectly stated. "[A]ssignments of error in 'the giving or the failure to give' an instruction are subject to RCr 9.54(2)'s bar on appellate review, but unpreserved allegations of defects in the instructions that were given may be accorded palpable error review under RCr 10.26." *Id.*

To the extent that Appellant claims that the trial court was correct to instruct on imperfect self-defense, but that it incorrectly stated the instruction, we agree that review is available. However, upon review, we are not persuaded that any error occurred.

Appellant claims that, because of the way the instructions were structured, the jury was unable to give fair consideration to the concept of imperfect self-defense that might have mitigated the killing of Weatherwax from wanton murder to second-degree manslaughter or reckless homicide. The theory of imperfect self-defense that would justify an instruction on the lesser crime of second-degree manslaughter is based upon the factual premise that the accused had the *actual subjective belief* that deadly force was necessary to protect himself from the victim. Once the jury concludes that the defendant *did not* have that actual belief, there is no longer the possibility of a lesser offense based upon imperfect self-defense.

In this case, the instructions explaining the concept of self-defense (Instruction Nos. 7 and 8) clearly incorporate the "actual belief" element of that concept; and, those instructions preceded the instruc-

---

2. The applicable Kentucky statutes and many appellate court decisions use the term "self-protection" instead of the more common term, "self-defense." In the context of this case the terms are synonymous and we use them interchangeably.

tions on the substantive offenses of murder (Instruction No. 9); first-degree manslaughter (Instruction No. 10); second-degree manslaughter (Instruction No. 11); and reckless homicide (Instruction No. 12). For the jury to find Appellant guilty under Instruction No. 9, murder, it had to believe beyond a reasonable doubt that Appellant "was not privileged to act in self-protection." Therefore, the jury had to believe that Appellant *did not have* an actual belief that his use of deadly force against Weatherwax was necessary. Once the jury made the factual determination that Appellant did not have an actual belief in the necessity of acting in self-protection, the lesser offenses of second-degree manslaughter and reckless homicide were no longer viable options. If Appellant did not have an actual belief in the necessity of using force against Weatherwax, he could not have had a recklessly or wantonly formed belief in that necessity.

We recognize the conceptual complexities inherent in Kentucky's self-defense statutes, but we believe the instructions given in this case provided the jury with an accurate roadmap to navigate the legal intricacy involved. Perhaps, better instructions could have been designed for this particular case. At trial, however, the parties showed no interest in doing so. We see no manifestation of injustice here, and so we reject Appellant's argument.

## VI. THE TRIAL COURT DID NOT ERR IN REFUSING TO IN-STRUCT UPON A LESSER OF-FENSE BASED ON EXTREME EMOTIONAL DISTURBANCE

■ Appellant next contends that the trial court erred by denying his request for an instruction on first-degree manslaughter based upon the theory that the jury could have reasonably believed from the evidence that, when he killed Weatherwax,

he acted under the compelling influence of an extreme emotional disturbance (EED). First-degree manslaughter is a lesser degree of homicide than murder.

■ As with any lesser degree of an offense, "[a]n instruction on [first-degree manslaughter] is proper only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense [of murder], and yet believe beyond a reasonable doubt that he is guilty of the lesser offense [of first degree manslaughter]." *Hudson v. Commonwealth*, 385 S.W.3d 411, 416 (Ky.2012) (citing *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)). To support a manslaughter instruction based upon extreme emotional disturbance, the evidence must have been such that it could induce a reasonable jury to believe that Appellant acted violently because of "a temporary state of mind so enraged, inflamed, or disturbed as to overcome [his] judgment, and to cause [him] to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468–69 (Ky.1986).

■ Extreme emotional disturbance is the successor to the common law concept of "sudden heat of passion." *Spears v. Commonwealth*, 30 S.W.3d 152, 154 (Ky.2000). The two primary distinctions between EED and sudden heat of passion are the abandonment of the common law requirement that the killing occur in a "sudden heat of passion" upon "adequate provocation" and that the jury view the situation subjectively, from the defendant's point of view, rather than objectively. *Id.* at 155 (citations omitted). Thus, under EED, "mitigation is not restricted to circumstances which would constitute provocation 'in the ordinary meaning of the term.' ... In other words, it is possi-

ble for *any event, or even words,* to arouse extreme mental or emotional disturbance." *Id.* (citations omitted).

 It is well-settled that to qualify for an instruction on EED, there must be evidence of an "event that trigger[ed] the explosion of violence on the part of the criminal defendant" and that event must be "sudden and uninterrupted." *Foster v. Commonwealth,* 827 S.W.2d 670, 678 (Ky. 1991), *cert. denied,* 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992). "[I]t is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, *unless the additional proof of a triggering event is sufficiently shown." Id.* (emphasis added).

Appellant does not identify with particularity any specific triggering event to explain his violent actions; instead, he cites a series of disagreeable interactions and threatening exchanges that festered over a period of several months, culminating in the hostility Weatherwax exhibited just before he was shot. Appellant places particular emphasis upon the following language from *Spears:* "[T]he fact that the triggering event may have festered for a time in [the defendant's] mind before the explosive event occurred does not preclude a finding that [the defendant acted] under the influence of extreme emotional disturbance." 30 S.W.3d at 155 (quoting *Springer v. Commonwealth,* 998 S.W.2d 439, 452 (Ky. 1999)). Appellant also cites *Fields v. Commonwealth,* 44 S.W.3d 355 (Ky.2001) for the same theory.

In *Spears,* the defendant murdered his wife thirty-six hours after seeing her engaged in a tryst with her paramour. Notwithstanding the fact that a day and a half passed while the defendant's emotions festered, there was in *Spears,* unlike here, a specific and identifiable triggering event.

In *Fields,* the defendant conceived a child in an extramarital affair and killed it shortly after its birth. This Court acknowledged that, from the evidence, one could reasonably believe either of two possible theories for a triggering event to support a finding that the defendant acted under the influence of EED when she killed her newborn infant. One theory identified the discovery of her out-of-wedlock pregnancy as the triggering event which remained uninterrupted until she gave birth and killed her child. The other theory identified the birth itself, following Appellant's claimed state of denial with respect to her pregnancy, as an event, "so shocking to her as to constitute adequate provocation which triggered an EED." *Id.* at 359.

In both *Fields* and *Spears,* specific qualifying events can be identified. Appellant has no such event which can be cited as the trigger for a sudden outburst of emotion driven violence. The argument that the sight of Weatherwax charging Appellant wielding a board as a weapon could have been a triggering event does not withstand scrutiny, given the context of the altercation. Appellant and his cousin had exchanged verbal barbs for weeks and hours leading up to the final confrontation. After their last phone conversation, Appellant arrived at the party expecting a hostile reaction from his cousin and he was not disappointed. Appellant was apparently spoiling for a fight, so it is hard to conceive how Weatherwax's action could be a "triggering event," so sudden and shocking as to overcome Appellant's judgment, provoking him to react uncontrollably with a violent outburst.

Furthermore, Appellant did not testify, and so he provided no direct evidence to explain his state-of-mind or to identify a source of his extreme emotional distur-

bance, if in fact, he suffered such a disturbance. At most, we have evidence of the "bad blood" that existed between the two cousins, manifested by a series of events that would not trigger a sudden or a festering outburst of animus so severe as to constitute an extreme emotional disturbance as we have defined that concept. A jury could not find that Appellant acted as the result of an extreme emotional disturbance except by resorting to sheer speculation.

Upon examination of Appellant's argument and the cases cited, we are not persuaded that he has identified any legally sufficient triggering event that could have induced within him "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan*, 715 S.W.2d at 468. The trial court did not err in rejecting Appellant's request for a first-degree manslaughter instruction based upon extreme emotional disturbance.

## VII. CUMULATIVE ERROR AND DOUBLE JEOPARDY ISSUES

Appellant's final arguments are that he is entitled to a reversal of his conviction based upon the cumulative prejudicial effect of multiple errors, and that upon reversal of his wanton murder conviction, a retrial of the charge of intentional murder is barred by double jeopardy. Because we conclude that Appellant's trial was not marred by error, we necessarily conclude that there was no cumulative error. Because we affirm Appellant's conviction for wanton murder, his argument that he cannot be retried for intentional murder is moot.

## VIII. CONCLUSION

For the foregoing reasons, the judgment of the Christian Circuit Court is affirmed.

All sitting. All concur.