**William CHAMES, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2011–CA–000173–MR.**

Court of Appeals of Kentucky.

Nov. 2, 2012.

Discretionary Review Denied by Supreme Court Aug. 21, 2013.

Roy A. Durham II, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Christian K.R. Miller, Assistant Attorney General, Frankfort, KY, for Appellee.

Before MOORE, STUMBO, and VANMETER, Judges.

## OPINION

VANMETER, Judge:

William Chames appeals from the Kenton Circuit Court's judgment and sentence finding him guilty of sexual abuse in the first degree (two counts) and attempted sodomy in the first degree and sentencing him to two and a half years' imprisonment for each count of sexual abuse and seven and a half years' imprisonment for attempted sodomy, to run concurrently. For the following reasons we affirm in part, vacate in part, and remand for further proceedings.

In February 2007, Chames moved in with a woman named Mary, and Mary's daughter, S.S., who was sixteen years old at the time. Chames married Mary four months later. In November 2009, S.S. was placed into foster care. Once in foster care, S.S. changed high schools, bringing her into contact with Michelle Kruse, a teacher for students with moderate to severe functional and mental disabilities. During a meeting with Ms. Kruse, S.S. alleged that Chames had sexually abused

her on several occasions. Ms. Kruse later reported the disclosures.

The Child Advocacy Center ("Center") conducted a forensic interview with S.S., which Detective Joanne Rigney of the Covington Police Abuse Unit attended. S.S. maintained that on separate occasions, Chames lifted her shirt and sucked on her breasts, forced her hand onto his exposed penis, and placed his penis in her face, directed at her mouth. In January 2010, Det. Rigney interviewed Chames and Mary regarding S.S.'s allegations. Thereafter, Chames was indicted on two counts of sexual abuse in the first degree and attempted sodomy in the first degree.

Prior to trial, the Commonwealth filed a motion in limine requesting that the court prevent Chames from introducing evidence of prior allegations of sexual abuse made by S.S. against him at a family court adjudication in July 2008. The trial court granted the Commonwealth's motion on the basis that character trait evidence of the victim of criminal sexual conduct is inadmissible. Chames also filed a motion in limine requesting that the trial court exclude evidence of him providing S.S. with pornographic materials, and allowing S.S. to watch pornographic movies with him and Mary. He also sought to exclude a portion of Mary's testimony in which she stated that he had acted violently towards S.S. when he was taking her dog away. The trial court denied Chames' motion and admitted the evidence.

During cross-examination of S.S., she was questioned about inconsistencies between her testimony at trial and statements she had made during the forensic interview with the Center. The Commonwealth then examined Det. Rigney regarding the forensic interview, who testified that S.S. made consistent statements in her testimony. Chames objected on the basis of improper bolstering of a witness, which the trial court overruled. At the close of the Commonwealth's case, Chames moved for a directed verdict, which the trial court denied.

Following the close of all evidence, Chames asked the trial court to include a jury instruction for sexual abuse in the second degree as a lesser-included offense of sexual abuse in the first degree. The trial court declined to include the instruction. The jury found Chames guilty of all three counts and sentenced him to a total of seven and a half years' imprisonment. Chames appeals, alleging a litany of errors.

Chames first argues the trial court abused its discretion by excluding evidence of prior allegations of sexual abuse made by S.S. against him. We disagree.

We review a trial court's ruling on the admissibility of evidence for an abuse of its discretion. *Childers v. Commonwealth*, 332 S.W.3d 64, 68 (Ky.2010) (citation omitted). An abuse of discretion occurs when a decision by the trial court is "arbitrary, unreasonable, unfair or unsupported by sound legal principles." *Id.* (citation omitted).

Generally, an attack on a witness' credibility by reference to specific instances of conduct during cross-examination of the witness is permitted if probative of truthfulness or untruthfulness and the inquiry has a factual basis. KRE [1] 608(b). Kentucky's highest court recently undertook the issue of whether a defendant accused of sexual abuse may attack the credibility of their accuser during cross-examination on a prior false accusation in *Dennis v. Commonwealth*, 306 S.W.3d 466 (Ky.2010). The Court noted that both federal and

1. Kentucky Rules of Evidence.

state courts have held such evidence to be admissible, but the proponent of such evidence must make a preliminary showing that the prosecuting witness made a prior accusation and that the accusation was demonstrably false. *Id.* at 475. This requires the proponent to prove "there is a distinct and substantial probability that the prior accusation was false[,]" rather than merely "an inconclusive investigation of the allegation." *Id.* For example, in *Capshaw v. Commonwealth*, 253 S.W.3d 557, 565 (Ky.App.2007), we held that prior accusations are demonstrably false if the victim has admitted the charges were false or the charges have been disproved. (citations omitted). But a defendant's "inference that the accusation is false is insufficient to meet the demonstrably false standard." *Id.* (citation omitted).

■ In the case at bar, the record reveals that S.S. made prior allegations against Chames, which, after being substantiated by the Cabinet for Health and Family Services, were addressed in a petition before a family court in 2008. The family court dismissed the petition against Chames, finding S.S. to not be credible, and therefore unable to substantiate her sexual abuse allegations against Chames. However, nothing in the record indicates S.S. admitted that the allegations were false or had a motive to fabricate, nor has Chames proved the allegations were false. Our review of the record reveals that S.S.'s testimony before the family court was deemed as unreliable to support the petition. Thus, we find no abuse of discretion in the trial court's decision to exclude the evidence regarding the prior accusations against Chames made by S.S.

Next, Chames contends the trial court abused its discretion by allowing the Commonwealth to introduce evidence that Chames supplied S.S. with, and made her view, pornographic material, and pushed and elbowed her on one occasion. We disagree.

KRE 404(b) prohibits evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith[,]" unless "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident;" or if "so inextricably intertwined with other evidence essential to the case[.]"

■ S.S. testified that Chames gave her pornographic magazines and on one occasion forced her to watch a pornographic movie. The Commonwealth argued the evidence was indicative of an overall plan concocted by Chames to increase S.S.'s comfort level with sexual behavior. Though prejudicial to Chames' character, the evidence clearly serves a purpose other than to vilify Chames; the evidence was relevant to show that Chames had the intent and concocted a scheme to perform sexual acts with S.S., and used the pornography to aid him in his objective. *See Gilbert v. Commonwealth*, 838 S.W.2d 376, 378 (Ky.1991) (holding that evidence of defendant forcing his stepdaughters to watch pornographic movies reflected a part of the overall scheme to aid him in engaging in sexual intercourse with stepdaughters). Further, such evidence has been held to be "necessary for the jury to see the entire picture and evidence that provides the necessary perspective is competent." *Id.* at 379 (citation omitted).

■ Mary testified about an incident in which Chames took away S.S.'s puppy, and when S.S. tried to stop him, Chames pushed her out of the way and elbowed her. Since Chames was accused of crimes that involve the element of forcible compulsion, evidence regarding prior incidents in which he used force against S.S. was

relevant to the issue of forcible compulsion. Forcible compulsion can involve the implied threat of physical force which places a person in fear of physical harm. KRS[2] 510.010(2). Thus, Chames' prior acts of violence towards S.S. are admissible to prove S.S. feared that Chames would use physical force if she didn't comply with his sexual advances. *See Yarnell v. Commonwealth,* 833 S.W.2d 834, 837 (Ky.1992) (holding that evidence of past physical and emotional duress is admissible to prove children lived in continued fear of what defendant would do to them or their mother, which caused them to go along with deviate sexual behavior). Accordingly, the trial court did not abuse its discretion by admitting evidence of Chames providing S.S. with pornography or being violent towards her.

■ Chames also makes the argument that the trial court abused its discretion by permitting the Commonwealth to bolster S.S.'s testimony. Specifically, Chames claims the trial court should not have admitted Det. Rigney's testimony that S.S. made prior consistent statements in her interview with the Center. We disagree.

KRE 801A(a)(2) provides that a prior out-of-court statement of a witness is inadmissible unless "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" Chames introduced evidence that S.S. made statements during her testimony that were inconsistent with statements made during her interview with the Center. During Det. Rigney's testimony, evidence was elicited that S.S. made some consistent statements in her testimony with those made in her interview by the Center. Chames' defense throughout trial focused on S.S.'s inconsistencies and inability to remember or recite specific details regarding the alleged crimes. Under these circumstances, Det. Rigney's testimony confirmed S.S. had been consistent even though Chames charged her with fabricating the allegations. We find Det. Rigney's testimony rebutted a charge of fabrication or improper motive and was properly admitted.

Next, Chames argues he was entitled to a directed verdict on all counts at the close of the Commonwealth's case. Specifically, Chames maintains that no evidence existed to prove he acted with forcible compulsion, or that he engaged in deviate sexual intercourse with respect to his charge of sodomy in the first degree. We disagree.

Upon consideration of a motion for a directed verdict,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citations omitted).

■ KRS 510.110(1)(a) provides that "[a] person is guilty of sexual abuse in the first degree when: He or she subjects another person to sexual contact by forcible compulsion[.]" As we stated earlier,

---

**2.** Kentucky Revised Statutes.

forcible compulsion is defined as "physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under [KRS Chapter 500]." KRS 510.010(2). A victim does not need to physically resist the sexual acts for forcible compulsion to exist. *Id.*

In *Gibbs v. Commonwealth*, 208 S.W.3d 848 (Ky.2006) (overruled on other grounds by *Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky.2010)), the Court described a situation similar to the case at bar in which forcible compulsion was used to sexually contact the victim, stating:

> Appellant's act of taking Sarah Smith's hand and placing it on his penis is required physical force and his intent was to cause the sexual contact between the two.... Sarah Smith testified that Appellant *forced* her to touch his penis. Sarah Smith did not consent or contribute to the act of touching Appellant's penis; it was the sole act of Appellant that caused Sarah Smith's hand to be placed on Appellant's penis. Although there was no duress or resistance on Sarah Smith's part, forcible compulsion has no such requirement. It simply requires physical force *or* threat of physical force.

*Id.* at 856–57.

■ Here, S.S. testified that on one occasion Chames raised her shirt and bra and "sucked on her nipples." S.S. stated that after doing this, Chames told her not to tell her mom or he would kill her. On a second occasion, S.S. testified that Chames pulled his pants down, and then put her hand on his penis. On both occasions, S.S. stated she was scared of Chames. Similar to *Gibbs*, S.S. did not consent or contribute to the sexual contact. Under the circumstances, the sexual contact would not have occurred without forcible compulsion. Viewed in a light most favorable to the Commonwealth, S.S.'s testimony was sufficient to conclude that Chames used forcible compulsion to subject her to sexual contact.

■ Furthermore, a person is guilty of attempt to commit sodomy in the first degree if he or she acts with the necessary culpability required for the commission of the crime and intentionally takes a substantial step in the course of conduct planned to commit the crime. KRS 506.010. Sodomy in the first degree is defined as engaging "in deviate sexual intercourse with another person by forcible compulsion[.]" KRS 510.070(1)(a). Deviate sexual intercourse involves "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another[.]" KRS 510.010(1). In this case, S.S. testified that Chames unzipped his pants and put his penis right in front of her mouth. S.S. testified that she would not let him put his penis into her mouth because she kept her mouth shut. From this evidence the jury could reasonably infer that Chames used force to place his penis directly in front of S.S.'s mouth in an attempt to penetrate her mouth. Such an inference supports a charge of attempted sodomy in the first degree. Accordingly, the trial court did not err by denying Chames' motion for a directed verdict on all counts.

Chames next asserts that the trial court erred by not instructing the jury on second-degree sexual abuse as a lesser-included offense. We disagree.

■ A lesser offense may be treated as a lesser-included offense if it does not require proof of a fact not required to prove the greater offense; if it does, the offense is simply a separate, distinct offense. *Hudson v. Commonwealth*, 202

S.W.3d 17, 20–21 (Ky.2006) (citation omitted). Defendants are entitled to have the jury instructed on any lawful defense, including lesser-included offenses which are considered defenses against the higher charge. *Id.* (citation omitted). A charge of second-degree sexual abuse requires proof that (1) a defendant subjects another person to sexual contact, and (2) that person is incapable of consent because he or she is intellectually disabled. KRS 510.120(1)(a). Thus, second-degree sexual abuse requires additional facts to prove that the victim was incapable of consent due to being intellectually disabled. As a result, Chames was not entitled to a jury instruction on second-degree sexual abuse as a lesser included offense.

■ Chames' final argument is that the trial court improperly acted outside of its jurisdiction by listing the conditions of his conditional discharge. We agree.

In its January 13, 2011, judgment and sentence, the trial court stated: "Defendant is placed under the supervision of the Department of Corrections and may be subject to a number of special conditions of supervision as follows," after which the court listed a number of conditions. Further, the court stated, "[t]he Defendant shall: Assume financial responsibility for any treatment required by himself and any treatment required by the victim of [his] offense and keep those accounts current."

■ KRS 532.043(1) requires a trial court to order a period of "postincarceration supervision" for persons convicted of a felony offense under KRS Chapter 510. However, the Department of Corrections, rather than the trial court, is tasked with setting the conditions for such supervision. KRS 532.043(3)(a). The parties cite to an unpublished case, *Smith v. Commonwealth*, 2010 WL 1005907 (Ky. March 18, 2010), in which the same trial court as in the underlying action imposed the same set of conditions of the defendant's conditional discharge. In *Smith*, the Kentucky Supreme Court vacated that portion of the judgment which stated the defendant "shall" follow certain conditions, holding that the trial court had exceeded its authority granted under KRS 532.043. Here, the Commonwealth argues because the trial court substituted the word "shall" with "may" it did not exceed its authority by dictating conditions, but merely suggested the same conditions. However, despite the change in wording from "shall impose" to "may impose," the fact remains that "[t]he conditions and supervision of the felony conditional discharge are set by the executive branch." *Jones v. Commonwealth*, 319 S.W.3d 295, 298 (Ky.2010) (citing KRS 532.043(3) and (4)). The separation of powers doctrine precludes each of the three branches of government from encroaching upon the domain of the other two branches. *Manns v. Commonwealth*, 80 S.W.3d 439, 443 (Ky.2002). As a result, the trial court acted without authority to do so when it listed the conditions that could be imposed upon conditional discharge.

■ Additionally, though the court is granted authority to impose restitution under KRS 532.033(3) and (4), the court must set a certain, specified amount to be paid to the victim. Here, the trial court required Chames to assume financial responsibility for any treatment required, but did not set the amount to be paid. Such an order does not comply with the statute. As a result, these portions of the sentence are vacated. *See Manning v. Commonwealth*, 281 Ky. 453, 457, 136 S.W.2d 28, 30 (1939) (holding that a sentence in excess of authority is void only as to the excess).

The judgment of the Kenton Circuit Court is affirmed in part, vacated in part, and this case is remanded to that court

with instructions to enter a new judgment and sentence omitting the terms of Chames' conditional discharge and imposed financial restitution.

ALL CONCUR.