RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0755-MR

DARRIN WALKER                                                                    APPELLANT

v.              APPEAL FROM KENTON CIRCUIT COURT
                HONORABLE PATRICIA M. SUMME, JUDGE
                ACTION NO. 15-CR-00157-001

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; TAYLOR AND K. THOMPSON, JUDGES.[1]

THOMPSON, K., JUDGE: Darrin Walker, *pro se*, appeals the summary denial of

his motion for Kentucky Rules of Criminal Procedure (RCr) 11.42 relief, raising

thirteen arguments about how the Kenton Circuit Court erred. We affirm because

Walker raises new arguments for the first time on appeal, raises arguments already

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of Appeals expired on December 31, 2022. Release of this Opinion was delayed by administrative handling.

resolved in his direct appeal, and his remaining arguments regarding ineffective assistance of counsel and circuit court error are wholly without merit.

## FACTUAL AND LEGAL BACKGROUND

On February 26, 2015, Walker and Lois A. Jones were jointly charged by a grand jury on the same indictment. Walker was charged with eight counts of first-degree sodomy of a minor under the age of twelve for acts that occurred against Hannah Morris[2] (H.M.) between August 31, 2005, and August 4, 2011 (counts one through eight). Walker was also charged with one count of first-degree rape of by forcible compulsion which occurred when H.M. was twelve years old or older, between September 27, 2012, to October 30, 2014 (count ten). Lois, Walker's live-in girlfriend and grandmother of H.M., was charged with one count of an unlawful transaction with a minor (for giving H.M. marijuana) which occurred in the same time frame as the rape (count nine). These matters came to the attention of law enforcement when H.M. disclosed information about the sexual assaults to her therapist some three years after the rape; the therapist reported these disclosures and H.M. was then interviewed at a child advocacy center (CAC). Walker's and Lois's trials were severed, and Walker was tried first.

---

[2] This is not H.M.'s real name. We use the pseudonym adopted by the Kentucky Supreme Court in Walker's direct appeal when quoting it, but otherwise use H.M.

At the trial H.M., who was then seventeen years of age, and numerous other witnesses testified for the Commonwealth. H.M. testified about the various acts of sodomy that Walker had done to her when she was when she was seven to eight years old and about the rape that occurred near Halloween when she was around twelve years of age. Only Lois testified for Walker.

After the Commonwealth rested, the circuit court directed a verdict on half of the first-degree sodomy counts, counts five through eight. Ultimately, the jury convicted Walker of the remaining four counts of sodomy and one count of first-degree rape. Walker was sentenced in accordance with the jury's recommendation to life imprisonment on each of the sodomy convictions and twenty years' imprisonment for the rape conviction, with the sentences to be served concurrently.

In his direct appeal to the Kentucky Supreme Court, Walker made the following arguments which are pertinent to the current RCr 11.42 motion. He argued the circuit court erred by permitting (1) H.M. to testify about other uncharged sexual assaults he committed against her in Ohio; and (2) multiple other witnesses to testify about matters that were either irrelevant or presented to impermissibly bolster H.M.'s testimony.

The Supreme Court affirmed, ruling that: (1) the circuit court did not abuse its discretion in allowing H.M. to testify about the uncharged Ohio assaults,

-3-

(2) while some of the testimony of witnesses lacked relevance and substance when they testified to rehabilitate H.M., it was harmless; (3) H.M.'s testimony was detailed and cogent and the jury could not have been swayed by any of the supposed bolstering evidence; and (4) Detective Loos's hearsay testimony did not require reversal. *Walker v. Commonwealth*, 548 S.W.3d 250, 253-55 (Ky. 2018). Accordingly, the judgment became final in July 2018.

In January 2020, Walker filed a motion to vacate his conviction and sentence pursuant to RCr 11.42, raising nine specific arguments. Walker argued he was denied effective assistance of trial counsel and his right to a fundamentally fair legal proceedings when: (1) counsel failed to object and request a mistrial to bolster witness testimony from Amber Jones, Tiffany Wright, H.M.'s mother and Detective Loos; (2) counsel failed to call Walker's sister Donna Walker who was present in the courthouse and willing to testify as a character witness during the trial but counsel did not call her until the sentencing phase of the trial. Counsel also failed subpoena Walker's employer Linda Young as a character witness and counsel failed to subpoena Ron Peters who worked as a handyman and was familiar with Walker's residence who would have testified there was no bed in the basement contrary to H.M.'s testimony; (3) counsel failed to request a second mistrial based on Detective Loos bolstering H.M.'s statements by repeating her entire CAC interview and testifying that Walker rubbed sunscreen on H.M. before

-4-

raping her, even though H.M. did not testify about Walker rubbing sunscreen on her; (4) counsel failed to argue that the circuit court erred by allowing the Commonwealth to ask leading questions of H.M. about Walker's body parts over defense counsel's objections; (5) the circuit court erred in excluding and suppressing exculpatory evidence in favor of Walker and trial counsel also erred by failing to argue that the circuit court erred by improperly ordering an *in camera* review of mental health records of the alleged victim which contained exculpatory evidence; (6) counsel failed to argue that the use of a "carbon copy multiple count indictment" was improper where the Commonwealth failed to introduce evidence sufficient to prove each offense and also to differentiate each count from the others; (7) the circuit court erred by permitting the Commonwealth to introduce evidence of an uncharged offense which allegedly occurred during a camping trip in Ohio and a photo of H.M. frowning which was taken on the trip; (8) trial counsel erred by failing to request that the jury be admonished as to H.M.'s testimony and the statements of witnesses Amber, H.M.'s mother and Tiffany being hearsay as there was no independent corroborating evidence that he did what H.M. said he did; and (9) counsel failed to demonstrate that H.M. did not smoke marijuana where the Commonwealth failed to present evidence that H.M. smoked marijuana; where Walker and Lois denied this claim and the only evidence of it is

H.M.'s statements to others; and H.M. had a track record of lying and every time his counsel would raise an issue it would be overruled.

The circuit court denied Walker's motion without an evidentiary hearing. The circuit court examined each argument raised in turn and concluded that each was either precluded by the Kentucky Supreme Court's decision on direct appeal in which they were already addressed, should have been raised on direct appeal, were without merit as decisions made were correct, or Walker could not establish prejudice.

## RCr 11.42 APPEAL

On appeal, Walker raises thirteen separate claims of error. He added four new arguments for the first time on appeal, he altered two arguments to add additional concerns not raised below, he dropped three arguments from consideration before us,[3] he split two arguments from below into four arguments on appeal, and he kept four arguments basically the same as he argued them below.

### I. Arguments First Raised on Appeal

The new arguments Walker raised for the first time on appeal are that: (1) H.M.'s claim that there was a bed in the basement was not corroborated by anyone; (2) the Commonwealth in the direct examination of Lois acted

---

[3] These waived arguments are those regarding: (1) counsel's failure to request a second mistrial; (2) counsel failing to request that the jury be admonished as to H.M.'s testimony and witnesses' testimony being hearsay; and (3) counsel failing to establish that H.M. smoked marijuana.

unprofessionally by using unwarranted and unnecessary interrogation tactics with her by badgering her and calling her a bad grandma, and that the DVD of the trial was missing the portion of the recording containing this behavior and appellate counsel did not receive it and "it is now being preserved as . . . it was not brought to the trial Court's attention through Appellant[']s RCr 11.42"; (3) he was denied his right to a fair trial when the circuit court denied his request for a mistrial after he objected to Detective Patricia Blake's repeated use of the word "victim" during her testimony after counsel made a timely objection; and (4) he was denied his right to a fair trial when counsel made a timely objection to the relevancy of the testimony of Raylene Wright which was overruled.

As these arguments were not raised before the circuit court below, they cannot form the basis of a reversal now as this Court "is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989). There is a "long-standing prohibition against presenting a new theory of error at the appellate level – the overwrought but irresistibly descriptive prohibition against feeding a different can of worms." *Henderson v. Commonwealth*, 438 S.W.3d 335, 343 (Ky. 2014) (footnote omitted).

> On appeal, a party may only present those issues that were fully presented to the trial court and, further, may not bring forward new legal grounds on appeal to challenge those errors. This rule is a keystone of Kentucky appellate practice, and the policies undergirding it remain strong. The trial court should be

-7-

given a "reasonable opportunity to consider the question during the trial so that any problem may be properly resolved at that time, possibly avoiding the need for an appeal"; and the rule ensures "there is a discrete decision for an appellate court to review" by "requiring that trial counsel focus the trial court's attention on a purported error by specifically identifying it[.]"

*Id.* at 343-44 (footnotes omitted) (quoting *Fischer v. Fischer*, 348 S.W.3d 582, 588-89 (Ky. 2011)).

Similarly, we cannot consider those portions of arguments in which Walker added additional elements not raised below. Therefore, as to his argument which was split in two that counsel erred by failing to object and request a mistrial to bolstered witness testimony, we will only consider this argument as it was argued below. We will not consider Walker's arguments first added on appeal in which he (1) expanded the list of objectionable witness testimony to include the testimony of Dr. Robin Rennie and Raylene; and (2) added the argument that all the witnesses were used to illicit irrelevant hearsay (rather than just erroneously bolstering H.M.'s testimony).

As to Walker's argument which was also split into two in which he argues that the circuit court erred in ordering an *in camera* review of mental health records of H.M. from North Key Psychiatric Hospital (North Key) and counsel erred in failing to argue that by doing so the circuit court was excluding exculpatory evidence, we will not consider the expansion of this argument. On

appeal, Walker also added to his argument by claiming he was entitled to have received discovery regarding H.M.'s records from Cincinnati Children's Hospital. We will not consider this new argument.

As to Walker's remaining arguments that are properly before us on appeal, we consider and address them by categories. We note that the crux of all of Walker's arguments is that H.M.'s testimony by itself could not be enough to convict him as it was not corroborated, and she did not report the assaults and rape until years later. Most of Walker's arguments are an effort to exclude other testimony and evidence in the mistaken belief that he would then be entitled to be acquitted because he never admitted to committing the crimes. He consistently maintains this position in his motion below and in his appellate briefs.

This is incorrect. A victim's testimony, so long as it is competent, is sufficient for a conviction. The jury chose to believe H.M. as was within its purview.

## II. Arguments Previously Addressed on Direct Appeal

Walker raises substantive arguments which were previously considered on direct appeal. We cannot revisit issues already raised before and determined by the Kentucky Supreme Court. We will also not consider issues that should have been raised on direct appeal. Therefore, we decline to consider Walker's two arguments that allege that the circuit court admitted improper

testimony which bolstered H.M.'s testimony from Tanya Wright, Amber, H.M's mother, and Detective Loos.

## A. Bolstering

Specific arguments were made on appeal regarding improper bolstering by Amber and Detective Loos, but Tanya's and Raylene's testimony was also discussed and at least implicitly rejected as being harmful. The Kentucky Supreme Court addressed these bolstering arguments as follows:

> Appellant also contends that the testimony of multiple witnesses was either irrelevant or presented to impermissibly bolster Hannah's testimony. These issues are properly preserved. Before addressing these claims on the merits, it is necessary to provide some brief background information.
>
> Defense counsel questioned Hannah regarding the allegedly inconsistent statements between her testimony and what she stated in her interview at the CAC. Defense counsel also questioned Hannah concerning her motive for disclosing the abuse in an apparent attempt to challenge her claims. Indeed, Appellant's trial strategy was to impeach Hannah's credibility.
>
> To rebut this line of questioning, Erlanger Police Detective Tom Loos testified that Hannah's trial testimony was consistent with what she told the medical professionals at CAC. Appellant argues that this was impermissible. As the Commonwealth correctly notes, however, such evidence is inadmissible unless "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" KRE[4] 801A(a)(2). *See also Chames v.*

---

[4] Kentucky Rules of Evidence.

-10-

*Commonwealth*, 405 S.W.3d 519 (Ky. App. 2012). In *Chames*, the court concluded that an investigating detective's testimony was properly admitted in rebuttal to a claim that the child victim's testimony was recently fabricated or was the product of improper motive. *Id.* at 524.

Detective Loos was also asked by the Commonwealth whether Hannah made any statements at the hospital about "the first time something occurred." In response, Detective Loos repeated what Hannah told the CAC staff concerning the sexual assault that occurred during a camping trip when Hannah was four years' old. Defense counsel objected, which was sustained by the court. Detective Loos continued, however, describing several different sex acts that Hannah recalled during her CAC interview.

Appellant also takes issue with the testimony of Hannah's aunt, Amber Jones. Amber testified that Hannah told her some information about Appellant and that Hannah was "nervous" at the time. She did not testify to any details of their conversation. Hannah's cousin, Tanya, testified that she received a text message from Hannah concerning Appellant. She did not disclose the details of the sexual abuse or any other details about what Hannah told her. Tanya's mother, Raylene Wright, testified that she received a phone call from Lois sometime within the past several years and that Lois was "very belligerent" during the call.

We agree with Appellant that the relevancy of some of the preceding testimony is questionable. More specifically, the nexus between some of these disputed communications and the crimes is somewhat unclear. However, Tanya, Raylene, and Amber testified very briefly in what appears to be an attempt by the Commonwealth to rehabilitate Hannah's credibility after defense counsel cross-examined her. Their passing

-11-

comments lacked substance. Any error that occurred was harmless.

Hannah's testimony was detailed and cogent. She discussed numerous occasions when Appellant abused her. Appellant called only one witness in his defense – Lois Jones. There is no way that the jury was swayed by any arguably irrelevant or "bolstering" testimony that may have entered the record here. *See Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) ("A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error.").

And although Detective Loos' testimony included hearsay that exceeded the bounds permitted under KRE 801A(a)(2), this error does not require reversal. It is doubtful that the outcome would have been different here but for the disputed portion of Detective Loos' testimony.

*Walker*, 548 S.W.3d at 254-55.

As to Detective Loos's and Amber's testimony bolstering H.M.'s testimony, that argument was clearly and unequivocally addressed and rejected on direct appeal. It is now the law of the case. We also lack any authority to overturn the Kentucky Supreme Court's decision on this matter.

While we recognize that Walker's argument about bolstering by Tonya and victim's mother does not appear to have been specifically raised on direct appeal, the Kentucky Supreme Court specifically stated that *any* improper bolstering evidence was harmless. Furthermore, such arguments should have been

-12-

raised on direct appeal in conjunction with the other arguments about bolstering and it is not appropriate to raise them for the first time in an RCr 11.42 motion.

## B. Ohio Offense

Walker's argument that the circuit court erred by permitting the Commonwealth to introduce evidence of an uncharged offense which allegedly occurred during a camping trip in Ohio and a photo of H.M. frowning, which was taken on the trip, was raised on direct appeal and rejected by the Kentucky Supreme Court as lacking all merit.

As recounted by the Kentucky Supreme Court:

> Hannah testified that Appellant had sexually abused her on a prior occasion in Ohio. Clearly, Appellant was not charged for this in Kentucky, and, therefore, it was not an issue to be proven by the Commonwealth at trial. Appellant argues that the trial court erred by permitting this testimony because it constitutes impermissible prior bad act evidence under KRE 404(b). As the Commonwealth correctly notes, however, evidence of prior instances of sexual assault against a child victim constitutes a well-recognized exception to KRE 404(b). *E.g.*, *Harp v. Commonwealth*, 266 S.W.3d 813, 822 (Ky. 2008).

> Although this exception is subject to limitation, the testimony at issue here was relevant and probative. Moreover, we cannot say that it was unduly prejudicial. KRE 403. Therefore, the trial court did not abuse its discretion here.

*Walker*, 548 S.W.3d at 253. As this issue was already resolved on direct appeal, we will not address it here for the same reasons discussed *supra*.

-13-

### III. Arguments Regarding Ineffective Assistance of Trial Counsel

We next address the remaining issues regarding ineffective assistance of counsel. However, we note that some of these arguments also contain allegations of circuit court error.

To be entitled to the extraordinary relief of RCr 11.42, Walker must establish he was deprived of his constitutional right to counsel. *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky. 2008). Under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984), Walker must show his counsel's performance was incompetent and prejudiced him because it fell below an objective standard of reasonableness and there is a reasonable probability that the result of the proceeding would have been different but for counsel's errors. "Where the record is clear that an ineffective assistance of counsel claim would ultimately fail the prejudice prong of *Strickland*, regardless of the outcome of a hearing on the deficiency prong, the trial court should be affirmed even in the absence of such a hearing." *Haley v. Commonwealth*, 586 S.W.3d 744, 751 (Ky. App. 2019).

### A. Failure to Call Witnesses

Walker argues that his counsel was ineffective for failing to call his sister Donna to testify as a character witness during the guilt phase of the trial to testify that he was "with adult women" and "worked hard and made positive

choices" and in failing to call his employer Young who would also testify to his positive character in that he taught music to children and had never been accused of any wrongdoing toward them. We agree with the circuit court that evidence was not relevant under KRE 401 and was improper character evidence under KRE 404. Walker argued that witnesses for the Commonwealth were allowed to testify as to irrelevant matters, but Donna's and Young's anticipated testimony was of even less relevancy. It was appropriate to call Donna during the mitigation phase of the trial and would have been improper to present her testimony earlier.

As to the handyman, Peters, Walker argued that if Peters was subpoenaed that he would have testified there was no bed in the basement in the residence, and this testimony was important as H.M. testified the sodomies occurred on a bed in the basement. As to this, H.M. testified that no one was allowed in the basement without Walker's permission and that Walker had his bedroom in the basement. H.M. testified that Walker would bring her down to the basement and let her play with his musical equipment before sodomizing her on a bed in the basement.

Walker did not submit an affidavit from Peters to confirm that he in fact had come to Walker's residence during the timeframe in issue, had ever been in the basement and in fact recalled whether or not there was a bed in the

-15-

basement.  Walker also failed to allege that Peters entered the basement of that house during the relevant time period.

Assuming that Peters would testify that there was no bed in the basement during the relevant time period, we still do not believe that this testimony would have likely changed the outcome of the trial.  Walker did have evidence presented before the jury that he did not have a bed in the basement.  Lois testified that Walker slept in a separate bedroom from her on the main floor of the house; Lois denied that Walker had his bedroom in the basement or that there was a bed in the basement or a couch in the basement.

However, other portions of Lois's testimony were consistent with H.M.'s testimony.  Lois acknowledged H.M. visited her in that house, that Walker had a separate bedroom from Lois, that when H.M. had overnight visits there that H.M. slept with Lois in her room.  She agreed that Walker had a studio in the basement with his musical equipment and that no one was allowed in this basement studio without his permission (although Lois noted she would go to the basement to do laundry).

Whether the bed was in the basement or not is a periphery matter of limited relevance, especially considering how easy it would be to move a bed.  Additionally, a child remembering one detail inaccurately would not negate her testimony about specific acts of sodomy involving Walker, a man she had known

for many years. The jury could believe H.M. was mistaken about there being a bed in the basement without thereby concluding that she was also mistaken or had lied about Walker sodomizing her. Therefore, Walker cannot establish he was prejudiced by the absence of testimony by Peters which would match Lois's that there was no bed in the basement.

## B. Leading Questions

Walker next argues that counsel was ineffective by failing to argue that the circuit court erred by allowing the Commonwealth to ask leading questions about Walker's body parts over defense counsel's objections. Having reviewed the video of H.M.'s testimony, it is evident that after H.M. testified in response to the question that Walker argues was leading, defense counsel objected, a bench conference was held, and the circuit court overruled that objection. Walker has not argued that his counsel did not adequately explain and advocate for his position regarding this objection. Therefore, it appears that Walker's argument is that his counsel should have continued to argue his position after the circuit court overruled the objection. However, once the circuit court has ruled, the matter was determined and if any error took place, it needed to be pursued on appeal. Additionally, we do not believe the circuit court's ruling was in error or that any prejudice could be shown.

-17-

### C. H.M.'s Psychiatric Records

Walker next argues that the circuit court erred in excluding exculpatory evidence in his favor by excluding H.M.'s psychiatric records from North Key and that his counsel was ineffective for failing to argue that the circuit court erred by improperly ordering an *in camera* review of H.M.'s mental health records and allowing them to be excluded as they contained exculpatory evidence.

To put these arguments in context, we review what occurred regarding these records prior to trial and Walker's subsequent request for disclosure of these records prior to filing his RCr 11.42 motion. In February 2015, Walker's trial counsel submitted a motion for discovery that among other things sought discovery of "[a]ny and all documents, videos, or audio tape which are exculpatory in nature or are possibly relevant to the impeachment of any witness[.]" In March 2015, the order for discovery and inspection specified that "the Commonwealth has an obligation and responsibility to provide exculpatory evidence to the Defendant." The Commonwealth produced many items in discovery to Walker, including a copy of the CAC interview with H.M.

In May 2015, Walker's trial counsel specifically requested "all educational, psychiatric, psychological, counseling, and medical records of the child witness, H.M. be released to the defense." The Commonwealth did not object to providing counseling records for Dr. Rennie and any Cabinet for Health

and Family Services records regarding H.M.'s disclosures against Walker but objected to producing all medical records and any other psychological/counseling records. The Commonwealth also requested *in camera* review of any ordered records. In June 2015, the circuit court ordered an *in camera* review of Dr. Rennie's records but indicated these were the only records to be produced.

In October 2015, the Commonwealth filed a motion *in limine* requesting that the circuit court "prohibit the Defendant and defense counsel from introducing testimony regarding H.M.'s mental health" including "evidence that H.M. was seen regarding her mental health at . . . [sic] Northkey[.]" The Commonwealth explained that contained in the disclosed Cabinet records and the records from Dr. Rennie, there was reported information about H.M.'s prior treatment at North Key, H.M. had attempted suicide in the past, has suicidal tendencies, suffers from depression and eating disorders, and had been hospitalized at North Key in relation to her mental health. The Commonwealth sought an order prohibiting introduction of H.M.'s hospitalization and prescription for Fluoxetine. The Commonwealth argued that H.M.'s prior mental health condition was not relevant as it did not affect her credibility and thus should be excluded pursuant to *Commonwealth v. Huber*, 711 S.W.2d 490 (Ky. 1986).

In November 2015, Walker's trial counsel filed a motion for additional records, seeking the release of "all psychiatric, psychological, and

-19-

counseling records of the child witness, H.M." Trial counsel argued that these records were key for challenging H.M.'s credibility and had learned from other records disclosed that H.M. had been hospitalized at North Key after behavioral issues, cutting episodes and suicide attempts. Trial counsel also argued that "[e]xculpatory evidence may also be discovered through examination of such records, such as H.M.'s denial that any sexual abuse occurred."

In March 2016, the circuit court's discovery order concluded that pursuant to *Commonwealth v. Barosso*, 122 S.W.3d 554, 564 (Ky. 2003), the circuit court would authorize the release of the North Key records for an *in camera* review because "there was evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence" as the North Key records "are within the time frame of these events and treatment could be related to these events." The circuit court separately ordered the North Key records produced under seal to the court's chambers for *in camera* review.

After the circuit court reviewed H.M.'s medical records from North Key, a protective order was issued. In this order the circuit court's protective order indicated that H.M.'s records are privileged pursuant to KRE 506 and 507, it had determined that they "may contain exculpatory evidence" it had "redacted information that is not relevant or exculpatory," and that "[t]he defense counsel and prosecutor [were] given a copy . . . of the records file from North Key." The

-20-

circuit court ordered that "[d]efense counsel **shall not copy or share** any items or information from this file nor disclose any items or information obtained therefrom with the Defendant without first obtaining permission from the Court." The circuit court very specifically explained the steps counsel would have to conform to protect this privileged information, even stating that after the trial the records needed to be returned to the court. Finally, the circuit court specified:

> **The Court has not determined the admissibility of the information contained in these records. The use of this information without the prior consent of the Court is prohibited. The determination for use as trial will be made upon the sealed request of Counsel prior to trial to assure that relevance can be balanced with the child witness's privilege**.

The record and the index of the record does not include any indication that trial counsel ever made a sealed request to use information contained in the North Key records during trial. Therefore, to the extent that Walker may be arguing that the circuit court erred in failing to admit these records or a portion of these records into evidence or prohibited trial counsel from impeaching H.M. with these records, there is no indication that the circuit court was ever asked by trial counsel to make any use of these records.

Prior to filing his RCr 11.42 motion, in October 2019, Walker filed a motion to release the medical records, mental health or any other records in the possession or control of the court which were filed under seal. The

-21-

Commonwealth opposed this "fishing expedition" and argued that these records were protected by Kentucky Revised Statutes (KRS) 194A.060(1), KRS 620.050(5) and (11), 922 Kentucky Administrative Regulations (KAR) 1:510, and 45 Code of Federal Regulations (CFR) Parts 160 and 164. The circuit court denied the release of these records.

Walker then filed a motion requesting the circuit court allow him to show cause why the records should be released, which was denied, and then asked that the circuit court reconsider its decision and filed a supplemental motion to release these records. Although Walker consistently stated in each of his motions that counsel had told him after trial that there was exculpatory information in the North Key records, Walker indicated that he did not know what that information was.

In his RCr 11.42 motion, Walker stated for the first time that "[i]t is alleged within the record that the alleged victim stated to North Key staff that she made up the allegation in order to get rid of Mr. Walker so that she could live with her grandmother." We note that Walker failed to provide any basis for how he learned this alleged information.

It appears that Walker is arguing that he had a right to personally receive the victim's entire North Key records and the circuit court erred in failing to give them to him and trial counsel was ineffective for failing to argue that he

-22-

should receive them all and instead consenting to the *in camera* procedure that resulted in only counsel getting access to these records. To the extent that Walker is arguing that the circuit court erred in failing to disclose exculpatory evidence to him prior to trial, that argument should have been raised on direct appeal. However, this argument is also fully without merit.

The circuit court was correct to review records subject to the counselor-client privilege and the psychotherapist-patient privilege *in camera* and limit what was disclosed. The counselor-client privilege provides an exception if the judge finds:

> (A) That the substance of the communication is relevant to an essential issue in the case;
>
> (B) That there are no available alternate means to obtain the substantial equivalent of the communication; and
>
> (C) That the need for the information outweighs the interest protected by the privilege. The court may receive evidence in camera to make findings under this rule.

KRE 506(d)(2). While the psychotherapist-patient privilege does not provide such an exception, the Kentucky Supreme Court nonetheless "held [in *Barroso*], that a criminal defendant's constitutional right to discover exculpatory evidence prevails over the psychotherapist-patient privilege, and so the parties must be given access to exculpatory information in a witness's psychotherapy records." *Dunn v. Commonwealth*, 360 S.W.3d 751, 767 (Ky. 2012).

But to preclude "fishing expeditions" into psychotherapy records, *Barroso* required a two-step process before evidence from the records may be turned over to the defense. [*Barroso*, 122 S.W.3d] at 563-64. "First, the defendant must produce 'evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence.' Second, the trial court must conduct an *in camera* review to determine whether or not the records sought actually do contain such evidence." *Commonwealth, Cabinet for Health and Family Services v. Bartlett*, 311 S.W.3d 224, 227 (Ky. 2010) (quoting *Barroso*, 122 S.W.3d at 563-64) (citation omitted).

*Id.* Following such *in camera* review, records need only be produced for the defense attorney if the evidence is necessary for the defense. *Barroso*, 122 S.W.3d at 564.

Here, Walker got more than was required. Discovery was in fact granted to the defense on the basis that these privileged records "may" contain exculpatory evidence not that they "did." Therefore, the circuit court disclosed records that may not have even been required to be disclosed.

The circuit court's decision to limit access to these records to defense counsel did not deprive Walker of any of his rights. There is no authoritative support for the proposition that the defendant must personally receive exculpatory records and we are confident that Walker did not have a personal right to review the psychiatric records of the child he was accused on sodomizing and raping.

As to the related argument that trial counsel was ineffective for failing to argue that the circuit court erred by improperly ordering an *in camera* review of

-24-

these records, Walker is simply incorrect. The circuit court appropriately followed the process outlined in *Barroso*. As the circuit court acted appropriately, and trial counsel was able to review these materials, no more was required. Had trial counsel made an argument that these records should have been disclosed to Walker directly, such argument would have failed.

We also do not agree that Walker should have been granted discovery of the North Key records prior to the filing of his RCr 11.42 motion. Walker appears to argue that he was entitled to these records because they did in fact contain exculpatory material.

However, Walker does not provide any basis for his allegation that the North Key records will show that H.M. recanted, with her stating "she made up the allegation in order to get rid of Mr. Walker so she could live with her grandma." Indeed, by couching it as an "allegation," Walker appears to be avoiding somehow being held responsible if the record does not in fact contain such information.

The circuit court rejected Walker's argument on the basis that the records were produced to counsel and defense counsel would have been aware of any exculpatory evidence. It thus addressed his claims though not this allegation directly. We find it difficult to believe that if there was such a "smoking gun" within these records that trial counsel, who vigorously and effectively represented Walker, would not have made an effort to get this evidence before the jury,

perhaps by asking H.M. about it during cross examination. We will not condone a fishing expedition into H.M.'s mental health records and agree that it would not be appropriate for Walker to have access to these records.

Additionally, to the extent that Walker disagrees with the circuit court's failure to address his specific allegation as to what exculpatory evidence was contained within these records, RCr 11.42(6) provides in relevant part that:

> A final order shall not be reversed or remanded because of the failure of the court to make a finding of fact on an issue essential to the order unless such failure is brought to the attention of the court by a written request for a finding on that issue or by a motion pursuant to Civil Rule 52.02.

Kentucky Rules of Civil Procedure (CR) 52.02 provides that a judgment may be corrected within ten days. The provision in RCr 11.42(6) is the functional equivalent of that contained in CR 52.04 and, thus, interpretations of that provision are also applicable here.

"It is fundamental that a party who asserts a claim must prove that claim to the satisfaction of the trier of fact, and on failure of the fact-finder to rule on the contention, the pleading party must seek a ruling from the trial court by means of a request for additional findings of fact." *Vinson v. Sorrell*, 136 S.W.3d 465, 471 (Ky. 2004). If a party does not seek those additional findings of fact, the issue is not adequately preserved for appeal. *Id.*

Therefore, to the extent Walker's argument hinges upon whether the protected record in fact contained evidence that H.M. recanted, he needed to make a written request that the circuit court make a finding of fact on that issue, or it is waived. As he did not request that the circuit court make such a finding, we need not consider that aspect of his argument.

## D. Carbon Copy Multiple Count Indictment

Walker's final argument is that counsel failed to argue that the use of a "carbon copy multiple count indictment" was improper where the Commonwealth failed to introduce evidence sufficient to prove each offense and, also, to differentiate each count from the others. Walker is factually incorrect.

The issue of what facts underlay the multiple counts of sodomy in the indictment was a matter which Walker's trial counsel pursued with vigor first by repeatedly requesting a bill of particulars which would clarify this matter and then later by arguing that some of the counts should be dismissed. Walker omits any mention of these efforts by trial counsel.

Regarding these efforts, in July 2015, trial counsel first filed a motion for a bill of particulars, specifically requesting the Commonwealth "[s]tate with specificity when, where, how, what and by whom the alleged acts of sodomy occurred." In March 2016, the Commonwealth responded:

> In regards to when, where, how, what, and by whom the
> alleged acts of sodomy occurred, this information can be

ascertained from the Indictment, Real Estate Deeds of Lois Jones, Grand Jury Testimony, and CAC interview of H.M. The indictment time frame is based on when Lois Jones resided at two locations[,] specifically the Erlanger apartment and the Covington house with the studio basement. Deeds providing dates were provided to defense.

The Commonwealth also stated it had served a bill of particulars to the court and parties.

In July 2016, trial counsel again sought an order for a bill of particulars, arguing that the Commonwealth had failed to give an adequate response which comported with due process, and requested discovery or answers describing with specificity: (1) the act alleged in counts one through eight of the indictment, "the nature of the visit to the residence, who else was present at the residence, the time, and the date of each alleged act of counts 1 through 8" and (2) "what type of deviate sexual intercourse is alleged[.]" The Commonwealth responded, indicating that Walker had already been made aware of the address at which counts one through eight were alleged to have occurred, the CAC interview indicated the acts occurred in the basement of that house, and that H.M. indicated that Walker "performed oral sex on her 4-5 times at this location and that she performed oral sex on Defendant 4-5 times at this location." The Commonwealth argued that in accordance with *Buster v. Commonwealth*, 381 S.W.3d 294, 299-300 (Ky. 2012), Walker was provided fair notice which satisfied due process. The

Commonwealth noted that Walker had been provided with the recorded interviews of H.M., H.M.'s parents and witnesses Amber and Tiffany.

In August 2016, counsel filed a renewed motion to compel a bill of particulars with respect to counts three through eight or in the alternative to dismiss those counts and attached the summary the Commonwealth had provided which it did not believe was sufficient. Trial counsel again sought to have the Commonwealth describe with specificity the acts alleged, when and where they took place and what type of acts were alleged.

As no written order on this motion is contained in the file, it appears that this motion was either never ruled upon or was resolved orally against Walker prior to trial. However, we are confident that the function of the bill of particulars was satisfied in that Walker was provided with the "information fairly necessary to enable the accused to understand and prepare his defense against the charges without prejudicial surprise upon trial." *Wolbrecht v. Commonwealth*, 955 S.W.2d 533, 538 (Ky. 1997).

Upon the conclusion of the Commonwealth's case in chief on August 17, 2016, trial counsel specifically requested a directed verdict, arguing that the Commonwealth had failed to establish that counts one through eight were distinct events where H.M. discussed what had happened to her without distinguishing specific incidents in time. Trial counsel vigorously argued this point which

resulted in the circuit court granting a directed verdict as to counts five through eight as the court believed that only four specific acts besides the rape (count ten) were specified by H.M.'s testimony.[5] Trial counsel then proceeded to argue that a directed verdict should be granted on the remaining counts, but this motion was denied. Having reviewed H.M.'s testimony, we agree that H.M. did testify as to four distinct acts of sodomy and the rape, and it was thus appropriate for the jury to be instructed on counts one through four and ten. Therefore, Walker did not receive ineffective assistance of counsel regarding this issue. On the contrary, Walker received effective assistance of counsel and this issue was preserved for appeal.

To the extent that Walker may be arguing that the circuit court erred by failing to grant the directed verdict as to counts one through four, this is an issue that should have been addressed on direct appeal. However, there is no error because the counts that were presented to the jury were proper.

As explained in *Miller v. Commonwealth*, 77 S.W.3d 566, 576 (Ky. 2002):

> Whether the issue is viewed as one of insufficient
> evidence, or double jeopardy, or denial of a unanimous

---

[5] These were: (1) Walker placed his penis in H.M.'s mouth and ejaculated in H.M.'s mouth; (2) Walker placed his penis in H.M.'s mouth and ejaculated on her face; (3) Walker took H.M.'s pants off and placed his mouth on H.M.'s vagina (or placed his fingers on H.M.'s vagina for the lesser included offense of sexual abuse); and (4) Walker took H.M.'s pants off and placed his penis in H.M.'s mouth. The jury instructions similarly distinguished these acts of sodomy.

verdict, when multiple offenses are charged in a single indictment, the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.

If Walker is arguing that the evidence did not support each count for which he was convicted, he is incorrect. H.M. described distinct conduct about what was done to her by Walker which matched up with each count presented to the jury, which is all that is required. *See id.* at 576 (discussing that in *Hampton v. Commonwealth*, 666 S.W.2d 737, 740 (Ky. 1984), and other cases that child sexual abuse victims need not establish precise dates for the offenses committed against them, but the evidence must provide a distinct factual basis for each charge).

A "carbon copy" indictment only prejudices a defendant if it results in identical jury instructions on multiple counts, in which case prejudice results upon conviction of those multiple counts. *Miller v. Commonwealth*, 283 S.W.3d 690, 695-96 (Ky. 2009).

As explained in *Dunn v. Maze*, 485 S.W.3d 735, 748 (Ky. 2016):

The core problem when identical, generic counts are used is that "we cannot be sure what factual incidents were presented and decided by this jury." *Valentine v. Konteh*, 395 F.3d 626, 635 (6th Cir. 2005). The indictment in such a case is considered flawed for this reason. If the error in the indictment is carried on in the instructions and resulting jury verdict, a due-process violation occurs.

While the indictment here was flawed, it did not ultimately result in harm to Walker as the problem was addressed and corrected by the dismissal of counts that could not be differentiated, leaving only the counts that could be differentiated. The jury instructions described distinct conduct for counts one, two, three, four and ten of the indictment which matched up to H.M.'s testimony. Therefore, there was no due process violation and Walker was not prejudiced.

## CONCLUSION

Accordingly, the Kenton Circuit Court's summary denial of Walker's RCr 11.42 motion is affirmed.

THOMPSON, CHIEF JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Darrin Walker, *pro se*
LaGrange, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky