RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1489-MR

LANNY R. ARNOLD                                                    APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.     HONORABLE ERIC JOSEPH HANER, JUDGE
ACTION NO. 20-CR-000087


COMMONWEALTH OF KENTUCKY                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: A jury convicted Appellant, Lanny Arnold, of first-degree rape, first-degree sodomy, two counts of incest, two counts of first-degree sexual abuse, and intimidating a participant in the legal process. Appellant argues the circuit court erred by (1) denying his motion for a directed verdict as to the first-degree rape, first-degree sodomy, and first-degree sexual abuses charges, asserting no reasonable juror could conclude he engaged in these crimes by forcible

compulsion; and (2) by permitting the jury to have a copy of Appellant's recorded statement to the police during deliberations. We affirm.

## BACKGROUND

Appellant married J.A. in 2008. J.A.'s daughter, H.G., was seven years old at the time of the marriage. Throughout their marriage, Appellant physically abused J.A., believing J.A. was unfaithful to him. H.G. could hear Appellant abusing her mother at night through the walls of their home, and on two occasions J.A. had to go to the hospital with broken ribs. According to H.G., Appellant hurt J.A. "all the time."

One day when H.G. was fourteen years old, H.G. stayed home from school. Appellant entered H.G.'s bedroom and lay down beside her. H.G. did nothing and Appellant eventually left. Appellant did not touch H.G. during this encounter. H.G. called a relative to pick her up because she was not comfortable being alone with Appellant.

Approximately five months later, Appellant came into H.G.'s bedroom in the middle of the night. H.G. was then fifteen years old, and the family had moved in with H.G.'s grandmother. Appellant rubbed H.G.'s bare thigh and told H.G. about J.A.'s suspected infidelity. H.G. told Appellant she felt uncomfortable and, when H.G.'s grandmother shifted in her bed, Appellant got up

and left. H.G. did not immediately tell anyone about this incident; she feared Appellant because she was too aware he physically abused her mother.

Two or three weeks later, Appellant picked up H.G. from a friend's house and drove her to an alley instead of taking her straight home. Appellant said to the fifteen-year-old, "You're going to give me some of that pussy."[1] He parked his SUV and instructed H.G. to take off her clothes. H.G. initially begged Appellant not to do anything to her, and she eventually removed some of her clothes once Appellant told her that he would stop abusing J.A. if she did as he demanded. H.G. removed some of her clothing and Appellant pushed her into the back of the SUV. Appellant performed oral sex on H.G. and inserted his fingers into her vagina. H.G. also believed Appellant rubbed his penis against her vagina, but she was not sure if he inserted it. She cried and pleaded with Appellant to stop. The encounter lasted ten to fifteen minutes. Appellant drove H.G. home and told her that if she told anybody about what happened he would hurt her mom and anyone she cared about. Because she did not want Appellant to continue to hurt her mom, H.G. did not tell anyone about this encounter.

Another two weeks later, Appellant picked up H.G. from a friend's house. When H.G. began vomiting in Appellant's vehicle, he asked her why she

---

[1] We do not include this short quote gratuitously, but to illustrate, in even the slightest way, the vulgar nature of the unmanly and ferine individual who preyed upon H.G. The record is replete with similar evidence.

was sick. H.G. told him she was scared and because she knew what was about to happen. Heedless to H.G.'s fear, Appellant drove her to a secluded gravel road in Indiana and parked his SUV. Using a variant of the vulgar demand quoted above, Appellant confirmed H.G.'s fears. Though H.G. said she would not have sex with Appellant and asked him to drive her home, Appellant again made H.G. get into the back of the SUV. He removed her jeans and her hoodie. She again asked him to stop and to take her home. Appellant ignored her and, again, inserted his fingers into H.G.'s vagina, then rubbed his penis against her vagina. Appellant had the brutish temerity to then ask H.G. "why [she] didn't like it[.]"

After he stopped, Appellant told H.G. that if she told the police and he went to jail, he would "do what he said he would do" – hurt J.A. and others H.G. cared about – once he was released. Again, H.G. did not tell anybody about the encounter because she knew Appellant was capable of violence.

Approximately two weeks later, Appellant and H.G. were at home. Appellant instructed H.G. to lie down on his bed. Appellant lay down behind her and inserted his penis into her vagina. Again, H.G. did not tell anyone because she was afraid Appellant would hurt people she cared about.

H.G. eventually told J.A. what Appellant had done. When J.A. confronted him, Appellant grabbed J.A. and punched her in the head. The police arrived in time to witness the assault and took him into custody. Appellant

admitted to the police he abused J.A. and acknowledged he had done so in front of H.G. and her younger brother. However, Appellant insisted he never struck the children. He believed the children were scared because they observed Appellant and J.A. "fight so much[.]"

Upon a superseding indictment with H.G. the victim, Appellant was charged with one count of first-degree rape, two counts of first-degree sodomy, three counts of incest, one count of third-degree rape, two counts of third-degree sodomy, one count of intimidating a participant in the legal process, and four counts of first-degree sexual abuse.

At trial, the court granted Appellant's motion for directed verdict on one of the sodomy charges but denied his motions for directed verdict as to all other charges. Following closing arguments, the circuit judge told the jury they would have the trial exhibits with them during deliberations. Among these exhibits was a CD containing a recording of Appellant's statement to the police in which he told police about his domestic violence against J.A. throughout their marriage and engaging in domestic violence in front of the children.

The jury convicted Appellant of first-degree rape, first-degree sodomy, two counts of incest, two counts of first-degree sexual abuse, and intimidating a participant in the legal process. Following the jury's

recommendation, the trial court sentenced Appellant to a total of fifteen years' incarceration. He now appeals.

## ANALYSIS

Appellant presents two arguments to contest his conviction. First, he argues the circuit court erred by not granting his motion for a directed verdict on the first-degree rape charge, the first-degree sodomy charge, and both charges of first-degree sexual abuse; forcible compulsion is an element of each of these crimes, and Appellant argues there was insufficient evidence at trial to demonstrate he ever engaged in any sexual intercourse or contact with H.G. by forcible compulsion. Second, Appellant argues that, because juries are not permitted to review testimonial witness statements in the deliberation room, the circuit court erred by permitting the jury to have a copy of Appellant's recorded police interview with them during deliberations.

Appellant concedes neither of these specific issues was preserved for appellate review. Accordingly, both issues will be reviewed for palpable error. As the Kentucky Rules of Criminal Procedure provide:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

RCr[2] 10.26. Indeed, an unpreserved error "is reversible *only if* a manifest injustice has resulted from the error." *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000) (emphasis supplied). "[I]f, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial" and thus manifest injustice will not be found. *Id*. (citing *Jackson v. Commonwealth*, 717 S.W.2d 511 (Ky. App. 1986)). The alleged error must also be palpable, which means the errors "must be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citation omitted).

*Forcible Compulsion.*

First, we detect neither palpable error nor manifest injustice in the circuit court's denial of Appellant's motion for directed verdict as to his first-degree rape, first-degree sodomy, and first-degree sexual abuse charges.

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

---

[2] Kentucky Rules of Criminal Procedure.

*Gill v. Commonwealth*, 465 S.W.3d 35, 37 (Ky. App. 2015) (quoting

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).  Upon appellate

review, a defendant is only entitled to a directed verdict "if under the evidence as a

whole, it would be clearly unreasonable for a jury to find guilt[.]"  *Id.* (quoting

*Benham*, 816 S.W.2d at 187).

Appellant has only one basis for his challenge:  he argues no

reasonable juror could have concluded, based on the evidence, that Appellant

engaged in sex acts with H.G. by forcible compulsion.  We disagree.

Forcible compulsion is an element of rape in the first degree, KRS[3]

510.040(1)(a), sodomy in the first degree, KRS 510.070(1)(a), and sexual abuse in

the first degree, KRS 510.110(1)(a).  It is defined as:

> physical force or threat of physical force, express or
> implied, which places a person in fear of immediate death,
> physical injury to self or another person, fear of the
> immediate kidnap of self or another person, or fear of any
> offense under this chapter.  Physical resistance on the part
> of the victim shall not be necessary to meet this
> definition[.]

KRS 510.010(2).  Thus, "forcible compulsion may be shown in two broad ways:

an act of physical force or a threat of physical force" either of which causes fear.

*Yates v. Commonwealth*, 430 S.W.3d 883, 889 (Ky. 2014).

---

[3] Kentucky Revised Statutes.

Appellant argues forcible compulsion does not include his chosen version of threats – that he would stop physically abusing her mother if H.G. gave into his sexual demands – because that version does not threaten *immediate* physical force against anyone. He argues there was insufficient evidence at trial to show H.G. feared any *immediate* physical harm to her or her mother. Appellant's recharacterizing the nature of his threat does not persuade the Court.

Fear is the critical element. Fear is the sexual predator's weapon and Appellant knowingly used it to commit his crimes. "Forcible compulsion can involve the implied threat of physical force which places a person *in fear* of physical harm." *Chames v. Commonwealth*, 405 S.W.3d 519, 524 (Ky. App. 2012) (emphasis added). Therefore, a victim who reasonably fears immediate physical injury is experiencing forcible compulsion. H.G. reasonably feared Appellant's implied threats of physical force based on his past conduct. "'[F]orcible' compulsion does not require violence or duress or resistance by the victim." *Jenkins v. Commonwealth*, 496 S.W.3d 435, 446 (Ky. 2016). His argument, boiled to its essence, is that what he was doing to H.G. could not have caused her any reasonable fear. That argument is unreasonable and contrary to our jurisprudence.

In *Yarnell v. Commonwealth*, forcible compulsion was found – and convictions for rape, sodomy, and sexual abuse affirmed – where the victimized children feared Yarnell. He had screamed at them and committed acts of violence

-9-

against them and in front of them. 833 S.W.2d 834, 836-37 (Ky. 1992). The children "were subject to constant emotional, verbal, and physical duress[,]" and "lived in continued fear" of what Yarnell might do to them or to their mother. *Id.* at 837. The children "testified that they went along with the deviate sexual behavior only because of this fear." *Id.* The Supreme Court concluded that "[u]nder the evidence as a whole, it was not clearly unreasonable for the jury to find that Yarnell engaged in sexual intercourse with the children by means of forcible compulsion" and thus Yarnell was not entitled to a directed verdict of acquittal. *Id.*

Furthermore, the General Assembly chose broad language when it said: "'Forcible compulsion' means physical force or threat of physical force, express or implied, which places a person in . . . fear of any offense under this chapter." KRS 510.010(2). Evidence that a perpetrator's conduct reasonably caused the victim to fear the perpetrator was about to commit any offense identified in KRS Chapter 510 will suffice to satisfy this fear element. The Commonwealth presented such evidence in this case.

In this case, as in *Yarnell*, it was not unreasonable for the jury to find Appellant committed first-degree rape, first-degree sodomy, and first-degree sexual abuse by means of forcible compulsion, and thus we detect no palpable error in the circuit court denying Appellant's motion for a directed verdict.

-10-

H.G. testified that Appellant frequently subjected J.A. to physical abuse which, on two occasions, required hospitalization. Appellant abused J.A. in front of H.G. and her brother. H.G. heard Appellant abuse J.A. through the walls at night. She was acutely aware of Appellant's compunctionless violence toward J.A. and acquiesced to what Appellant did to her out of fear of further violence toward J.A. or toward herself, including sexual violence the General Assembly made a crime in KRS Chapter 510.

The circumstances of each of the above-detailed sexual assaults support this conclusion. During the first, Appellant drove H.G. to a secluded alley, told her to remove her clothes and expressed his intention that she be submissive to his sexual aggression. At the second assault, Appellant drove H.G. to a secluded gravel road in Indiana and H.G.'s fear physically manifested in her vomiting in his vehicle. In the final encounter, H.G. had already been subjected to two sexual assaults at the hands of Appellant. She testified she knew Appellant could easily hurt her, should he so choose. Across all three encounters, H.G. reasonably feared Appellant and the violence he readily and comfortably engaged in, and such fear is sufficient to establish forcible compulsion.

We find no palpable error in the circuit court's denial of Appellant's directed verdict motion.

<u>*Appellant's Recorded Police Statement.*</u>

Appellant argues he is entitled to a new trial because the circuit court allowed the jury a copy of Appellant's recorded police statement in deliberation. He argues his statement was a testimonial witness statement and juries are not permitted to review such statements during deliberations. He argues the jury was prejudiced against him by having the recording while deliberating. We disagree.

As the Rules of Criminal Procedure provide, jurors are permitted to bring "all papers and other things received as evidence in the case" with them into the deliberation room, as well as "any notes they may have made during the course of the trial[.]" RCr 9.72. However, "in practice, some testimonial exhibits such as expert opinion letters or summaries, depositions, recorded witness statements, and the like may be marked and admitted for preservation purposes but not given to the jury because doing so would be akin to sending a witness back to the jury room." *McAtee v. Commonwealth*, 413 S.W.3d 608, 620 (Ky. 2013).

Thus, RCr 9.72, although it is phrased broadly, has been narrowed by judicial interpretation. The Supreme Court in *McAtee* noted that in the prior case of *Berrier v. Bizer*, it reversed a defense verdict – which this Court had affirmed – because the trial court permitted defense counsel to introduce written summaries of witness interviews as exhibits. *Id*. (citing *Berrier v. Bizer*, 57 S.W.3d 271, 276 (Ky. 2001)). Typically, a jury is not even permitted "to take a witness's sworn

deposition to the jury room" because jurors might "not accord adequate consideration to controverting testimony received from live witnesses." *Id.* (quoting *Barrier*, 57 S.W.3d at 277).

That said, in *McAtee* the trial court permitted the jury to review in the jury room a recorded interview between the defendant's neighbor and a police detective. *Id.* at 614-15. Though the Supreme Court held the circuit erred in permitting this exhibit to be in the jury room, it determined the error to be harmless. *Id.* at 622. The Court deemed the written summaries at issue in *Berrier* "akin to allowing counsel to testify on behalf of the witnesses" and were inadmissible hearsay evidence as well as "inaccurate[,]" but the recorded interview in *McAtee* was "properly admitted as a trial exhibit and cannot be characterized as 'inaccurate.'" *Id.*

The Supreme Court determined the error was harmless because there was "fair assurance that the judgment was not substantially swayed by the error." *Id.* Importantly, the *McAtee* court observes a key distinction between recorded statements of witnesses and a defendant's recorded confession; "a defendant's confession is *always* admissible and is never hearsay under KRE[4] 801A(b), whereas other witnesses' prior statements are only admissible under the three circumstances defined in KRE 801A(a)." *Id.* at 624 (emphasis original).

---

[4] Kentucky Rules of Evidence.

As in *McAtee*, the outcome here was not substantially affected by having Appellant's interview with jurors in deliberation, even if it was error to allow it. The recording was played for the jury at trial, so the jurors already heard its contents and were permitted to take notes about it during trial. Who can say whether juror access during deliberations prejudiced Appellant or allowed the jurors to correct any mistakes in notetaking that weighed against him?

In sum, if it was error in this case to allow the jury to have this evidence in deliberation, it was not a palpable error resulting in manifest injustice because "a substantial possibility does not exist that the result would have been different." *Graves*, 17 S.W.3d at 864. Appellant is not entitled to a new trial.

## CONCLUSION

Finding no reversible error, we affirm the judgment of the Jefferson Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Joshua M. Reho
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky